IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) No. 3:19-cr-00003-RRB-MMS |
| TRISTAN JAMAL GRANT, a/k/a "Goo," | ) |
| Defendant. | ) |

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER

I, Daryl Allison, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a motion for a temporary restraining order pursuant to 18 U.S.C. § 1514(a).

2. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been since October 2003. In this assignment I have investigated a number of violations of United States Code. I have investigated violent crimes including murder of federal employees, bank robberies, threats utilizing interstate communications, sex trafficking, and narcotics and firearms trafficking. I have conducted and participated in search warrants, arrest warrants, and interviews of people involved in these crimes.

Affidavit in Support of Restraining Order
United States v. Tristan Grant
3:19-cr-00003-RRB

3. I am familiar with the information contained in this affidavit based upon investigations I have participated in as well as conversations and written reports of other law enforcement officers.

4. Because I submit this affidavit for the limited purpose of securing a temporary restraining order, I have not included each and every fact known to me or the government. I have only included those facts necessary to establish reasonable grounds to believe that harassment of an identified victim or witness exists.

## RELEVANT STATUTES

5. Title 18 U.S.C. 1514(a) allows the District Court to issue an order prohibiting harassment of an identified victim or witness in a Federal criminal case.

6. Title 18 U.S.C. 1514(d)(1)(B) defines harassment as "a serious act or course of conduct directed at a specific person that . . . causes fear or apprehension in such person; and . . . serves no legitimate purpose."

## FACTS

7. On April 24, 2021 Tristan Grant placed a call from the Anchorage Correctional Complex to an individual known to be Grant's aunt. Grant told his aunt that his lawyer would be submitting a motion for a new trial based on witnesses being intimidated, making false statements, and now wanting to recant their testimony. Grant then asked when the last time his aunt had spoken to "her." Based on the context of the conversation, agents familiar with the case believe that Grant was referring to Jacqueline

Affidavit in Support of Restraining Order
United States v. Tristan Grant
3:19-cr-00003-RRB

S., minor victim J.S.'s mother. Grant asked his aunt to call Jacqueline to ask her if she had gotten the letter. Grant's aunt informed Grant that she (Jacqueline) had received the letter and that the "other thing" happened on Monday. Grant told his aunt that he had spoken with "Julissa" and that she had told him everything and that he told her to keep doing what she was doing. Based on the context of the reference, agents familiar with the case believe "Julissa" to be Julissa Carter.

8. On that same day, approximately two hours later, Grant placed a call to a number known by agents to be associated with Jacqueline. A young male answered the phone. The young male told Grant to stop calling and attempted to end the conversation numerous times. Grant argued with the child and demanded to know if the child's mother had received the letter. Grant instructed the child to have Jacqueline call Grant's aunt. The child asked Grant how he got their address, to which Grant replied that he had been to their residence "a thousand times." Grant verified with the child again that his mother had received the letter. He then told the child to have "Jacqui" call his aunt.

9. On April 25, 2021 Grant called Julissa Carter. He instructed Carter to call "her" as soon as they terminated their call and tell her that she and her mother needed to call his lawyer. Based on the context of the call agents familiar with the case believe "her" to refer to minor victim J.S. Grant told Carter that his aunt had spoken with J.S. and that J.S. had stated that none of what was said ever happened. He asked Carter to have both

J.S. and Jacqueline call his aunt. Grant then tells Carter to get Jacqueline's phone number from his aunt.

10. On May, 1 2021, Grant again called his aunt and asked if she had spoken to "that Lady." Based on the context of the conversation, agents familiar with the case believe Grant may have been referring to Jacqueline. Grant's aunt stated that she was advised not to speak to her because it might "look some type of way." Grant instructs his aunt to speak to her anyway. Grant told his aunt that her (Jacqueline's) testimony needed to be put into an affidavit in case she changes her story. Grant's aunt stated that she would call her and make sure that she does it by the next Monday. Grant then told his aunt that he wanted her (based on context, agents believed this to be a reference to J.S.) to visit his lawyer before she got locked up again and that she was the most critical part of his attempt to get a new trial. Grant then told Carter that he is worried that J.S. would run away before she speaks to his lawyer.

11. Later that same day Grant calls Julissa Carter and asked if she had spoken to "that Lady." Based on the context of the call, agents believe this to be a reference to Jacqueline. Grant instructs Carter to place a three way call to Jacqueline, which was not answered. Grant instructs Carter to keep calling Jacqueline to make sure that she got the letter and to tell her to call his aunt. Grant has Carter attempt to place another three way call to Jacqueline which was not answered.

Affidavit in Support of Restraining Order
United States v. Tristan Grant
3:19-cr-00003-RRB

12. On May 2, 2012 Grant again called Julissa Carter. During the call, Grant gave Carter an address known to be the residence of Jacqueline and tells her that, if all else fails, to "slide" over there. J.S. is also known to have stayed at that address.

13. On May 15, 2021 Grant calls an unknown female and asks if she spoke with "her." He then instructs her to call "her" because he attempted to call on someone else's pin and found her number was restricted.

14. On May 31, 2021 an FBI agent interviewed Jacqueline. She stated that a woman who identified herself as "Red," known by agents to be Julissa Carter, came to her residence looking for J.S.. Jacqueline believed that Carter was excited and "ready to fight." Carter repeatedly asked for J.S. and stated that she need to "drop her thing." Carter also said that she wanted J.S. to change her testimony because it had caused Grant to get a sentence of fifteen years to life. Jacqueline told the agent that she had received a letter from Grant instructing her to "fix this" and have J.S. change her testimony.

15. On May 30-31, 2021, minor victim J.S. called an FBI TFO multiple times from Hiland Correctional Facility and stated that "Red" – Julissa Carter – went to her mother's house looking for her and threatening to beat up J.S.'s mother if J.S. did not recant her statements. The FBI TFO perceived that J.S. was in substantial emotional distress out of fear for her and her mother's safety.

//

//

Affidavit in Support of Restraining Order
United States v. Tristan Grant
3:19-cr-00003-RRB

## SUMMARY AND CONCLUSION

16. Based on Grant's jail call statements that J.S. is critical for him to get a new trial, references to a letter sent to Jacqueline, direction to his aunt and Julissa Carter to contact Jacqueline and J.S., and direction to Julissa Carter to visit Jacqueline's residence; as well as Jacqueline's statement that she received a letter from Grant instructing her to have J.S. change her testimony, I believe there are reasonable grounds to believe that Tristan Grant is harassing minor victim J.S..

17. Based on Julissa Carter's attempt to call Jacqueline while on the phone with Grant, her receipt of Jacqueline's address from Grant, and Jacqueline's statements that Julissa Carter came to her residence ready to fight and demanding that J.S. change her testimony, and J.S.'s subsequent fearful calls to FBI, I believe there are reasonable grounds to believe that Julissa Carter is harassing minor victim J.S..

_____
DARYL ALLISON
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO before me this 17 day of June, 2021, at Anchorage, Alaska.

Notary Public
My commission expires: with office

Affidavit in Support of Restraining Order
United States v. Tristan Grant
3:19-cr-00003-RRB