E. BRYAN WILSON
Acting United States Attorney

JENNIFER IVERS
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: jennifer.ivers@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>TRISTAN JAMAL GRANT,<br><br>　　　　　Defendant. | No. 3:19-cr-00003-RRB |

**SENTENCING MEMORANDUM**

The United States recommends imposition of the following sentence:

**INCARCERATION**................................................................**50 YEARS**
**SUPERVISED RELEASE**..........................................................**LIFE**
**SPECIAL ASSESSMENT**.........................................................**$6,000**
**RESTITUTION**.....................................................................**$3,000**
**FINE**...................................................................................**N/A**

Defendant Tristan Grant, age 36, is violent, sexually manipulative, and completely

remorseless, a dangerous combination making rehabilitation unlikely. A sentence of 50

years is the minimum necessary to ensure that he will not pimp and sexually abuse young

women and girls or shoot anyone ever again.

## FACTS

### *Grant's criminal history*

Grant has violent criminal history, and he has shown no sign of rehabilitation. In 2005, at age 20, Grant tried to rob four juveniles at gunpoint, hitting one of them in the head with the butt of his pistol. PSR ¶ 82. Grant served four years in custody, but after his release he repeatedly violated probation and served another 9 months. *Id.* He was convicted of his first drug felony in 2011 at age 26. PSR ¶ 84. That same year, Grant tried to shoot someone three times and was sentenced to 18 months for felony assault. PSR ¶ 85. The next year, Grant was convicted of his first federal offense – possession of cocaine base with intent to distribute – and was sentenced to 37 months. PSR ¶ 86. Grant violated supervised release multiple times, serving an additional 13 months as a result. *Id.* In 2017 Grant was convicted of assaulting his girlfriend Marika Alex. PSR ¶ 87.

### *Grant possesses firearms and shoots Ajela Banks*

On December 7, 2018, while on federal supervision, Grant and his friends jointly purchased an IO Nano AK pistol, using a straw buyer to disguise the true owners of the gun. PSR ¶ 12. Grant took videos of himself unboxing and brandishing the Nano, saying "straight out the box, bitches."

On December 12, 2018, Grant shot Ajela Banks with a 10mm pistol. PSR ¶ 15. Banks was two months pregnant with Grant's child, and Grant knew that. PSR ¶ 14; Doc. 236 at 249:12-20. Grant fled the scene of the shooting and tried to give the pistol to a

U.S. v. Grant
3:19-cr-00003-RRB

witness. PSR ¶ 14. Ultimately Grant went to his friend Julissa Carter's apartment and hid the gun in a bag, and Carter put the bag with the 10mm pistol and a box with the Nano in her Jeep Cherokee. *Id.* Grant was arrested in the Jeep with both guns inside. *Id.*

*Grant pimps Banks, K.C., and J.S.*

Grant was in a relationship with Banks and then began pimping her before the shooting. During the summer of 2018, Grant met Banks, who was 18 at the time, on social media. Doc. 236 at 116:25-117:3, 121:22. When she was a minor, Banks had been sex trafficked, which she and Grant discussed, and Banks learned that Grant was also a pimp. *Id.* at 118-123.

In September 2018, Grant moved from Virginia back to Alaska. *Id.* at 124-25. His first night in Alaska he stayed with Banks, and she fell asleep and woke up to the defendant sexually assaulting her. *Id.* at 126:19-22, 127:13-20. The next day, Grant was shot. PSR ¶ 16. While he was in the hospital, Banks brought Grant a firearm, and he posted a video of himself holding it in a hospital bed. *Id.* After he left the hospital, Grant lived on and off with Banks and another woman who was also pregnant with his child, Marika Alex. Doc. 236 at 131:18-132:17.

During that time, Banks believed Grant was her boyfriend, but the relationship devolved into violence, like "Ike and Tina Turner." *Id.* at 133:2-7. Although Grant pretended to care about Banks – at this time he was 33 and she was 19 – Grant took the money that Banks earned on dates, telling her "you just pissed me off, so you go to pay a fee" or that he needed the money. *Id.* at 134:23-135:18. Grant set Banks a quota of

$500/day. *Id.* at 136:14-25. Banks used some of the money she made escorting to pay for food, rent, and utilities. *Id.* at 135:20-136:13. Grant did not pitch in for food, rent, or utilities, despite living at Banks' apartment much of the time. *Id.*

While Grant was staying with Banks, 17-year-old J.S. came to live at the apartment. *Id.* at 140. J.S. was on the run at that time. *Id.* Grant knew that J.S. was relatively low functioning, describing her as "slow." PSR ¶ 15. Banks and J.S. had met at McLaughlin Youth Center and in foster care, facts that were discussed in front of Grant. Doc. 236 at 141-42. J.S. told Grant that she was 17. Doc. 239 at 60:16-18. Grant pressured Banks to post prostitution ads for J.S., but she did not want to because if "she gets raped or stuff that I went through, I didn't want to have her blood on my hands." Doc. 236 at 149:16-17. Grant wanted J.S. to do dates because J.S., a white girl, could make more money than Banks, a young Black woman. *Id.* 148-49. Despite Banks' reluctance, J.S. began going on dates and gave the money she earned either to Banks or to Grant. Doc. 239 at 62:21-25. J.S. recounted at trial that Grant drove her to a date where she performed a commercial sex act and Grant took the money she earned. *Id.* at 63:4-64:2.

In October 2018, J.S. invited another minor, K.C., to Banks' apartment. PSR ¶ 17. K.C. had run away from home and needed a place to stay. PSR ¶ 10. When K.C. arrived, she gave Grant – whose name was not on the lease but was clearly in charge – her PS4 in exchange for being allowed to stay at the apartment. *Id.* at 32. K.C. told Grant and Banks that she was 15. Doc. 239 at 11:15-22. Grant pressured Banks to teach K.C. how to post online prostitution advertisements and to escort, which she did. Doc. 236 at 166-69; Doc.

239 at 52. Grant and Banks came up with the nickname "Silky" to use in K.C.'s online ads. Doc. 239 at 42-43. Grant told Banks to get K.C. a phone to respond to ads. Doc. 239 at 52. K.C. went on dates and gave the money to Banks, who then gave it to Grant. Doc. 236 at 195-96. Doc. 239 at 21-22. Grant gave K.C. Xanax – so much that one time she was falling over and completely blacked out – and her recollection of her trafficking is spotty. Doc. 239 at 23; PSR ¶ 11. K.C. witnessed Grant throw Banks against a window and choke Banks while pinning her against a wall, and during one of those fights K.C. tried to intervene to help Banks. Doc. 239 at 26-27.

Text messages between Grant and Banks support the trial testimony about his role as a pimp. For instance, Grant and Banks argued on October 30, 2018 about the incident involving K.C. using Xanax. He admitted he gave K.C. a "zany" (Xanax). Grant texted that if something happened to the 15-year-old victim, Banks would go to jail because she, not Grant, was with K.C.:

| Timestamp: | Direction: |
|---|---|
| 10/30/2018 12:26:43 PM(UTC-8) | Incoming |
| Read: 10/30/2018 12:41:01 PM(UTC-8) | Body: Got you but you do give her shit and I do give you shit she was over there wit me they gave it to me I dnt fuck wit them so I gave it to her tf and what you doing and if you so worried bout her age then why you got her around cause if something happens then you going to jail |

During an argument on November 9, 2018, the defendant sent the following text message to Banks criticizing her for not generating enough income for him as a prostitute and bragging about how much money J.S. had earned for him:

U.S. v. Grant
3:19-cr-00003-RRB

| Timestamp:<br>11/9/2018    11:19:55<br>PM(UTC-9)<br>Read:       11/9/2018<br>11:20:09 PM(UTC-9) | Direction:<br>Incoming<br>Body:<br>Next week I'll be in another state bandz up you gone be out here if I let you live still talking shit. Bout goo man you think you the first goofy I win off instead of being a smart bitch and had waited till I won and got me or got up u leave with nothing no game no nothing bitch can't even make five a day what I need you for shit I rather do it on my own you can't help me can't even help yaself I was just at no bread the other day I got 1100 in my pockets frm nothing I get bread everyday even ya lil white home girl broke bread today two hundred on some two second shit lol you not no real bitch you a game thief that's gone forever scramble dnt let me see you nowhere before I leave and that weak azz club job you ain't gone have that for long trust |
|---|---|

Shortly thereafter, Banks texted that she might tell the police that the defendant was "pimping an pandering minors." The defendant said nothing in response to the allegation involving minors, and later told Ms. Banks that she would not report him to the police because "you a scared bitch." Those threats about calling the police, as well as Grant's violence toward Banks, prevented her from reporting what happened.

In other messages, the defendant spoke openly about his work as a pimp. For example, on October 30, 2018, Grant argued with Banks about who was pimping out the minor, eventually telling her that "you got the game fucked up you ain't never seen pimping like this you confused girl." Banks challenged the defendant's assertion, telling him, "ya ain't pimping u simping." In response, the defendant texted that Ms. Banks was correct, that he was "simping," and that he let other "shit get in the middle of [his]

U.S. v. Grant
3:19-cr-00003-RRB

pimping." A copy of that text message is below:

| Timestamp: 10/30/2018 1:25:05 PM(UTC-8) Read: 10/30/2018 1:25:06 PM(UTC-8) | Direction: Incoming |
|---|---|
| | Body: I take advice frm myself and you right I was simping that's why I'm falling back cause I let other shit get in the middle of my pimping and you ran lose and outta control so it's no reverse I fucked that up but I'm bAck on my shit and I'm getting my shit lined so when it is pimping again my shit strong and no distractions so what ever like I said do you let me get my camera |

In an exchange of messages on November 3, 2018, Banks described her

relationship with the defendant as "co-pimping." The defendant concurred, responding

with the message below, telling Banks that she was "right:"

| Timestamp: 11/3/2018 5:41:40 PM(UTC-8) Read: 11/3/2018 6:26:11 PM(UTC-8) | Direction: Incoming |
|---|---|
| | Body: I'm not beefing wit you or nothing shot fareal fareal I'm buying me a plane ticket today or tmrw so it dnt matter I almost bought this car today to help but for what I'm a wait to my money right and get something real and you right I was co pimping that's why ya shot like it is now nowhere you'll see |

Banks explained many of those messages at trial and confirmed that Grant was

trafficking minors. When asked why Grant didn't try to recruit even more minors, Banks

stated that "two is enough." Doc. 237 at 34:23.

Grant had pimped other minors in the past, however. V.P. met Grant when she was

only 14. He made her perform sexual acts with his "homeboys" and kept most of the money for himself. PSR ¶ 24. Grant himself had sex with V.P. when she was 14, and he created child pornography featuring her. PSR ¶ 9, 17, 24. V.P. was later trafficked by another man associated with Grant. PSR ¶ 17.

*Grant creates multiple child pornography videos with J.S.*

In 2018 Grant created two child pornography videos depicting J.S. giving him oral sex. One occurred in a restaurant drive-thru. Grant initially told Banks to "suck his dick," but she didn't want to, so he had J.S. did it instead and told Banks to record it. Doc. 236 219-20. Grant then posted the video on Snapchat after adding the HU$H logo, meaning "Have U Seen Her," Grant's pornography business. *Id.* at 221-22. A screen grab from the video showing the defendant reaching into his pants is below:



In text messages with Banks, J.S. expressed concern about the fact that the video had been uploaded onto Snapchat and the fact that her family had seen it:

| Timestamp: | Direction: |
|---|---|
| 11/29/2018  11:10:28 AM(UTC-9) | Incoming |
| Read:        11/29/2018 2:05:00 PM(UTC-9) | Body: I'm mad asf because my family and friends seen that shit and I'm mad ☐ because they are talking shit about me and the girls In myc are saying they want my had |

Grant created another pornography film involving J.S. around Thanksgiving 2018. Banks rented a hotel room, and Grant intended to create a pornographic video there. Doc. 236 at 225-26. The video depicted Grant pulling a gun out of his waistband. *Id*. at 234. Part of the video included J.S. performing oral sex on the defendant. *Id.* at 236. J.S. testified that she was on drugs when that video was filmed. Doc. 239 at 64:22.

*Grant attempts to cover up his crimes*

Grant was arrested on December 12, 2018 after shooting Banks. PSR ¶ 15. Grant told police that Banks actually shot herself. He admitted many of his crimes, including purchasing the Nano firearm, knowing K.C. was 15, giving K.C. the nickname Silky, knowing J.S. was "slow," and videotaping J.S. performing oral sex on him. *Id.* After his arrest, Grant asked both Banks and Marika Alex to delete his Snapchat account, which Alex did. *Id.* at ¶ 19-20, 28. Alex pled guilty to Evidence Tampering and was sentenced to time served. *United States v. Marika Alex*, 3:19-cr-00021-RRB, Doc. 67, 143. She was well aware of Grant's crimes, as the following text messages to Banks show:

U.S. v. Grant
3:19-cr-00003-RRB

| | 11/27/2018 8:38:36 PM(UTC-9) |
|---|---|
| Tell that pedophile ass nigga to quit fucking ppla kids and tend to his | |
| Source file: Keymorah's iPhone/var/mobile/Library/SMS/sms.db : 0x3F82C0 (Table: message, handle, chat, Size: 7299072 bytes) | |

| | 11/27/2018 8:39:40 PM(UTC-9) |
|---|---|
| Y'all extra dumb making pornos and shit I hope u getting paid cuz u fucking wit a bum broke nigga | |
| Source file: Keymorah's iPhone/var/mobile/Library/SMS/sms.db : 0x3F9FE8 (Table: message, handle, chat, Size: 7299072 bytes) | |

| | 11/28/2018 1:49:15 PM(UTC-9) |
|---|---|
| So say ya pimp | |
| Source file: Keymorah's iPhone/var/mobile/Library/SMS/sms.db : 0x40FE24 (Table: message, handle, chat, Size: 7299072 bytes) | |

While trial was pending, Grant tried to convince Banks and J.S. to recant and not to testify against him, tried to find out where K.C. was, and asked V.P. – his former victim – to testify on his behalf. In an August 25, 2019 letter to Banks, for example, Grant tried to convince her that law enforcement was not trying to help her, and that they needed to work together to "fix this whole situation," because he had a plan and she just needed to "get off the bullshit." He also told her to write him back using someone else's name, presumably because they were not supposed to be in contact:



you, Shit you got scared And These people Played you And used you, Shit Me too. But I snapped out of That. They Not trying to Help you In No way They Just trying to Lock A Nigga up so why would you Help Them. But Don't trip I Know How we can Fix This whole Situation And Be Straight. I Do Have It All Figured out But I Have A Plan. But you gotta get off The Bullshit

I Done DID Some Fucked up shit In my past, And Have
moved Forward, I Don't know why this Is All Happining
To Me, But I Know It gotta Be For A Reason. Don't Let
These people play you Nomore And win pebbles Fareal.
Do The Right Thing. Let's Fix This And I Bet you
Everything Gone Be okay I got you. JUST WORK
with Me It's Not to Late. Call My SiSTER OR My Aunt
And Let Them Know what's up And That you got this
Letter, ASAp. And Then write Me Back send It In
Someone elses Name There. Don't talk About your

Grant later started using third parties to forward mail to Banks. In a February 17,
2020 letter from Grant to Banks, delivered inside a card from someone else, Grant invoked
their daughter and told Banks that if she had to testify, she should just answer "I can't
recall" to all the questions, saying "everything depends on you":

HER Family. You See How much These people give A FUCK About you or
Me, All They want IS Information And convictions. AFter They get
What They want They Still do you dirty. Now We Both gotta Fight to get
out And get Are Daughter SMH. But As you Know My Family got This ▮▮▮▮

Incriminating yourself If your Lawyer Don't get you Immunity to Testify
He said All you have to Do Is ANswer All The questions Asked with
I Don't remember or I can't recall, They will Be Mad But It's Nothing
They can Do And They can't charge you with Anything They DRoped or
Anything New From This case Because you DID Not PERJURE your self.

> Everything depends on you I got trial march 03rd, I can Beat my charges If you go In There ~~&~~ And stick By Me. I'm still gone Have to do some Time For The guns, But That Ain't SHit. I...

In a February 20, 2020 letter that Grant sent to Banks via Julissa Carter, he told Banks not to testify against him or to answer "I don't remember" to all the questions:

> ways ~~you~~ we can Do This As Far As Them trying to get you to testify. ONE Way Is you can Just simply Decline to Testify It's nothing They can Do About That. Also I'm gone send My Investigator to ~~&~~ Interview so If They Find Any type of way to Make you testify whatever you said Before And what you say to Him you can't get In trouble For It Basically It won't Jeopardize your Deal. But Really All you Have to Do Is Decline to Testify And OR Say I Don't Remember or can't Recall to Any Questions. Let your Lawyer Know That you

Grant sent J.S. a letter on December 11, 2019 asking where Silky was and telling J.S. to testify that he did not pimp her, saying "you need to tell them that you told me that you was 18, and I never took you on no damn dates or got no money from you that's it":

> waste It Running Around out Here. Man what's up with Silky Is She In There with ya'll or DiD She get out, I Know you Don't talk to HeR But Still I Need to Know what's up with HeR She Told so many Lies when she First got Locked up It's cRAzY. Man I got Hella Federal charges For you And Silky ~~Session~~

> was. That's one of The main Things you need to Tell Them
> That you Told me That you was 18, And I Never Took you
> on No Damn Dates OR got No money FROM you That's It. And
> we most Def can stop Talking About This After This fereal.

Grant also tried to contact J.S. via a March 5, 2021 letter to another inmate to make

sure "everything is straight on her end":



> thought it was pretty funny when I First heard" it. Hey do you know
> anybody there named J████ ████, I think thats how you spell her
> Name. Anyways, if you do know her, if you could please tell her somethi
> Or me that'd be awesome. If not its fine. Tell her that ol' boy goo has tria
> in April 12th and wants to know if everything is straight on her end and
> s she good. Tell her that Trent Said Wassup Too. But yea, if you could do
> hat Id appreciate it.

On February 13, 2019 Grant sent V.P. a letter asking her to testify on his behalf,

saying that J.S. was already on board, and again asked Silky's whereabouts:



> THAt MAN you can Help ME get out Fareal. J████ Already
> Said she gone Help By going to court And Telling The Truth.
> I'M A NEED you AS A witness to FOR ME. DEBBIE'S IS Lying
> Saying I Helped Her pimp out Silky And I was with



> P.S. AH IS Silky In There with
> ya'll OR DID she get out.

*Grant's indictment, escape, and trial*

The United States indicted the defendant on January 15, 2019, for being a felon in

possession of a firearm. Doc. 20. Four superseding indictments followed, culminating in

U.S. v. Grant
3:19-cr-00003-RRB

ten charges: sex trafficking conspiracy, sex trafficking of a minor, participating in a sex trafficking venture, production of child pornography, and felon in possession. Docs. 34, 55, 61, 68. After several continuances, a bench trial was scheduled to begin on February 22, 2021. Grant was released to review discovery with his attorney the week before trial. Doc. 166. On the first day of that discovery review, Grant fled from his defense investigator and did not return to jail as ordered. He was later convicted of Escape. *United States v. Grant*, Case No. 3:21-cr-00027-TMB, Doc. 42.

After his escape, Grant's trial was rescheduled to begin April 12, 2021. This Court conducted a three-day bench trial and issued written findings convicting Grant of all charges. Doc. 214.

### *Grant's behavior while in custody*

Grant has spent months in punitive segregation for fighting, refusing to obey orders, and engaging in demonstrations while in custody. PSR ¶ 8.

### *Grant's post-conviction conduct*

Grant now faces 15-year mandatory minimum sentences for producing child pornography depicting J.S., and sentences of up to life imprisonment for her trafficking. After trial, Grant began repeatedly contacting J.S.'s mother, aiming to convince J.S. to recant her trial testimony. Doc. 246. Grant told his friend Julissa Carter to go to J.S.'s mother's home to convince J.S. to recant her trial testimony. *Id.* That incident caused both J.S. and her mother significant distress. *Id.* J.S. has since disappeared.

*Grant's other crimes*

In addition to shooting Banks, possessing firearms, trafficking K.C. and J.S., and creating videos of child pornography, Grant has been involved in many other criminal incidents. Witness V.P. reported that Grant trafficked her when she was 13 or 14 and produced sexually explicit videos of her. PSR ¶ 21, 24, 26. Grant himself has admitted pimping many women. In a self-produced autobiographical movie entitled *Goo-Pac: Frozen Jungle*, Grant said he was fearful about the birth of his first daughter because she was going to be hard on him "for all the females I did wrong, all the hoes that a n*** p'ed on . . . like all gas no brakes on they necks."

That documentary also showed Grant and his friends holding guns and displaying bullet holes from a recent shooting:

 

Grant is known around Anchorage as a shooter. In addition to being shot in the day he returned to Anchorage, and shooting Ajela Banks, Grant has been involved in many other shootings. He admitted being present for the murder of Jenna Delkittie in Mountain

U.S. v. Grant
3:19-cr-00003-RRB

View, and law enforcement investigation has indicated that Grant may have been the shooter. He also admitted being present for a shooting in Government Hill involving "Aladeen," which he blamed on Banks. He was involved another incident in Mountain View on the same day he shot Banks, which he claimed it was only a car chase, but Banks told law enforcement was a shooting. Grant was involved in another shooting at the Northway Mall in January 2018, along with Sammy Davis and Tajean Grant-McKay. Grant was named as a shooter in another incident on Hoyt Street where someone was shot.

In addition to the Dekittie murder, Grant is a suspect in two other homicides, including the 2018 murder of Carl Bowie. Law enforcement investigation indicates he shot another woman three times and was one of the shooters in an incident where a child was shot and nearly killed.

## GUIDELINES CALCULATION

The United States has one outstanding objection to Grant's Final Presentence Report regarding his leadership role in creating the hotel video of J.S. performing oral sex on him. For Counts 6 and 8, Grant played an aggravating role in the offense under U.S.S.G. § 3B1.1(c): Banks testified that the video was Grant's idea, that he pressured her and J.S. to move and not to waste their time in the hotel, and to "stop wasting time." Doc. 236 at 227. Grant had a pornographic film business and therefore stood to gain from creation of the videos. That enhancement would add two points, for an adjusted offense level of 40. PSR ¶ 57.

Whether or not this Court believes that adjustment is appropriate, Grant's guideline

range is Life. The United States concurs with the USPO's calculation that Grant's offense level is 43 and criminal history category VI.

## STATUTORY CRITERIA AND RECOMMENDED SENTENCE

A 50-year sentence of imprisonment is no greater than necessary to satisfy the 3553(a) factors.

### *Nature and circumstances of the offense*

Grant stands convicted of pimping two minor victims, creating multiple videos of himself engaging in sex acts with a minor, and possessing two firearms. During that same course of conduct, he also raped, impregnated, pimped, and shot Ajela Banks; escaped from federal custody while pending trial; and was involved in multiple homicides.

Grant continues to blame Banks for K.C. and J.S.'s trafficking, claiming he had no role. This cannot be farther from the truth: Grant preyed on young, vulnerable women, manipulating Banks into teaching them to be prostitutes, all for his personal benefit. He used all three of them for money and his own sexual gratification against their will.

Dr. Sharon Cooper testified about the dynamics of sex trafficking, including how pimps control and exploit their victims. Her testimony illuminates the true nature of Grant's crimes. On the topic of vulnerable victims, for example, she testified that minors who have been involved in the juvenile justice system are more likely to be trafficked, and that juvenile detention centers are hubs of recruiting victims: here, Banks, J.S., and K.C. knew each other from McLaughlin Youth Center. Doc. 236 at 36:16-18, 142:2, Doc. 237 at 16:2-10. Dr. Cooper testified that teenagers with developmental delays are more

vulnerable to trafficking, and Grant preyed on one such victim here. Homeless runaways are more likely to be pimped – J.S. and K.C. were both looking for a place to stay when Grant found and exploited them. Victims who have previously been exploited are more likely to be trafficked again, which happened when Grant sought out Banks, who had been violently trafficked in California before escaping to Alaska. Dr. Cooper testified that victims addicted to drugs are more vulnerable to trafficking and more easily controlled, and both K.C. and J.S. used drugs during their trafficking.

On the subject of how pimps control their victims, Dr. Cooper testified that pimps commonly use romance to initially gain control of their victims, as Grant did with Banks. When soft tactics fail, the pimp will resort to violence, and Grant was very violent toward Banks, strangling and later shooting her.

On the topic of recruitment, pimps typically use one victim – often most experienced – to help recruit other victims, as Grant did here by recruiting J.S. and K.C. through Banks. Pimps often give their victims nicknames, as here where Grant and Banks gave K.C. the nickname "Silky."

On the topic of how sex trafficking enterprises function, Dr. Cooper testified that pimps often set quotas for victims, as Grant did for Banks. Dr. Cooper testified that pimps teach their victims to be afraid of law enforcement, and Grant's text messages show his attempts to intimidate Banks by threatening to blame everything on her. His letters show how he tried to convince Banks that law enforcement was not on her side, tried to manipulate Banks and J.S. not to testify against him, and asked another victim,

U.S. v. Grant
3:19-cr-00003-RRB

V.P., to testify on his behalf. Dr. Cooper testified that victims can have a hard time remembering how many dates they went on, which happened with both K.C. and J.S. here. Dr. Cooper testified that it is common for pimps to be involving in other businesses like entertainment or pornography, which Grant openly admitted.

Grant constantly carried firearms around with him, another tactic to keep his girls in line. He admitted possessing firearms and making videos in which he engaged in sexual conduct with J.S., a minor that he referred to as "slow." These offenses involve relentless manipulation and violence by Grant.

*History and characteristics of the defendant*

Before committing these offenses, Grant was convicted of multiple felonies involving firearms, drugs, and violence. At the age of 20 he was sentenced to four years' imprisonment for armed robbery, but that was not enough to stop his violent behavior. PSR ¶ 82. At the age of 27 he was convicted of a federal felony and served 50 months' imprisonment, but again, that was not enough to deter him from engaging in shootings, pimping, and child pornography. PSR ¶ 86. Probation and supervised release have been similarly ineffective in curbing Grant's egregious conduct. PSR ¶ 82, 84, 86, 87.

*Seriousness of the offense*

Taken individually, sex trafficking of minors, production of child pornography, and possession of firearms are serious offenses. Taken together, they rise to a whole other level of depravity.

To truly capture the serious of these offenses, this Court should consider the harm

U.S. v. Grant
3:19-cr-00003-RRB

Grant caused to his victims. Victims of sex trafficking "suffer[] tremendously, virtually without exception."[1] Nearly all victims experience neurological symptoms like memory problems, insomnia, or poor concentration.[2] Other symptoms include headaches, dizziness, severe weight loss, malnutrition, loss of appetite, eating disorders, cardiovascular or respiratory difficulty, gastrointestinal symptoms, and dental problems.[3]

According to one study, "[s]urvivors were overwhelmingly traumatized not only physically, but mentally. The brutal treatment they endured created ongoing psychological and mental conditions in many of these victims and exploited existing mental instability in others."[4] The vast majority of victims experience depression, anxiety, nightmares, flashbacks, low self-esteem, and feelings of shame or guilt.[5] Many survivors have attempted suicide, and most have Post Traumatic Stress Disorder.[6] Those symptoms do not go away after victims escape their trafficking situation: "trafficking took a lasting mental and emotional as well as physical toll on nearly every survivor in the study."[7]

Reproductive issues are equally prevalent, including STIs, Hepatitis C, pain during sex, UTIs, and vaginal discharge.[8] Many survivors became pregnant while being trafficked

---

[1] Laura J. Lederer & Christopher A. Wetzel, *The Health Consequences of Sex Trafficking and Their Implications for Identifying Victims in Healthcare Facilities*, 23 Annals Health L. 61, 68 (2015).
[2] *Id.*
[3] *Id.* at 68-69.
[4] *Id.* at 70.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.* at 72.

U.S. v. Grant
3:19-cr-00003-RRB

and have abortions, sometimes against their will.[9]

Nearly all trafficking victims suffer degrading violence and abuse, like forced sex, punching, beating, kicking, forced unprotective sex, threats with weapons, strangulation, and abuse by people in authority.[10] Survivors experience high levels of drug and alcohol dependence, either because traffickers forced them to use substances as a control mechanism, or as a way of coping with their abuse.[11]

Survivors of child pornography experience real damage as well, "because child pornography is 'a permanent record' of the depicted child's abuse, and 'the harm to the child is exacerbated by [its] circulation.'"[12] Even if a child recovers from the abuse itself, circulation of images can reopen those wounds over and over.[13]

It is impossible for counsel or this Court to fully grasp the pain K.C. and J.S. have experienced and will continue to experience for the rest of their lives. The harm Grant caused cannot be measured. Instead, the best that can be done is consider this case in light of the above information. Here, Grant expressly targeted vulnerable victims: Banks had previously been trafficked; J.S. was 17 with developmental delays and had run away from home; K.C. was 15 and on the run; V.P. was only 14 when she met Grant.

K.C., reported memory loss from the drugs she was given while being trafficked by Grant. Doc. 239 at 23. J.S. likewise reported she was given drugs before going on dates.

---

[9] *Id.* at 72-73.
[10] *Id.* at 75.
[11] *Id.* at 75-76.
[12] *Paroline v. United States*, 572 U.S. 434, 440 (2014) (quoting *New York v. Ferber*, 458 U.S. 747, 749 (1982)).
[13] *Id.* at 440-41.

U.S. v. Grant
3:19-cr-00003-RRB

PSR ¶ 27. Banks testified that Grant raped, strangled, and shot her. Grant continues to harass J.S., knowing she has developmental delays that were likely exacerbated by her trafficking. Grant created a child pornography video with J.S. while she was 17 and on drugs. Doc. 239 at 64. Grant distributed another video of J.S. performing oral sex on him, causing her significant distress. Doc. 239 at 65. Grant may some day have the opportunity to leave prison depending upon the sentence this Court imposes. Banks, J.S., and K.C., however, have to live with the physical, mental, and emotional harms of Grant's conduct for the rest of their lives.

*Deterrence*

The seriousness of Grant's crimes has escalated over time, regardless of how much time he spends in prison. He trafficked multiple minors and created prostitution videos involving a minor for his own financial and sexual gratification. He has shown absolutely no remorse for his crimes, instead viewing himself as the victim. He has relentlessly blamed his victims for putting him in jail and has tried to convince them not to testify or to change their testimony. Because no sentence can actually deter Grant from committing crimes, lengthy imprisonment is the only way to ensure he does not commit more crimes in the future.

This Court should also consider deterrence of others. Grant is one of many defendants charged with child sex trafficking from 2019 to 2020.[14] Almost none of those

---

[14] *See United States v. Davon Smith*, Case No. 3:19-cr-00056-JMK-MMS; *United States v. Nicola Mongo*, Case No. 3:20-cr-00048-SLG-DMS; *United States v. Matthew Bautista*, Case No. 3:19-cr-00060-SLG-MMS; *United States v. Jayshon Moore*, Case No. 3:20-cr-00029-SLG-MMS.
U.S. v. Grant
3:19-cr-00003-RRB

defendants has accepted responsibility for his conduct.[15] Grant's sentence should send a message to child sex traffickers and potential traffickers that this serious crime will be punished accordingly.

### Protection of the public

The need to protect the public justifies a 50-year sentence. Grant poses a danger to a wide range of people: teenage girls, especially vulnerable ones; anyone who upsets him and might become a victim of his violent behavior; and the public at large while he carries guns and shoots people.

### The need to avoid unwanted disparities

The United States recognizes that a sentence of 50 years of imprisonment is significant, even compared to other child exploitation cases. Grant, however, presents a unique combination of violence, sexual manipulation, and lack of remorse that make him difficult to compare to other defendants. Grant's sentence should be tailored to the facts of his case.[16] His harms to his victims and to the community are deep and pervasive, and 50-year sentence is below Grant's Guideline range.

Don Webster, another serial child sex trafficker convicted after trial, was sentenced to 360 months' imprisonment at the age of 51, meaning he would not leave prison until his late 70s or early 80s.[17] A 50-year sentence would accomplish a similar purpose for 36-

---

[15] Nicola Mongo entered a plea agreement. 3:20-cr-00048-SLG-MMS at Doc. 54. Smith was convicted on all counts after trial. 3:19-cr-00056-JMK-MMS at Doc. 318. Bautista and Moore are still pending trial.

[16] *See United States v. Treadwell*, 593 F.3d 990, 1012 (9th Cir. 2010) (holding that a sentence that is tailored to the "specific characteristics of the offense and the defendant" is not disparate).

[17] *United States v. Jerry Starr*, Case No. 3:06-cr-00096-HRH, Doc. 428.

U.S. v. Grant
3:19-cr-00003-RRB

year-old Grant, preventing him from committing further harms after his release.

Oher courts routinely impose sentences of 40 years or more in child sex trafficking cases due to the severity of these crimes.[18] Life sentences are not uncommon.[19]

Grant may argue that there is a disparity between the government's recommended sentence in this case and in Ajela Banks' case. Banks played an important role in trafficking J.S. and K.C., but this Court should view her role through the lens of Dr. Cooper's testimony about how pimps manipulate victims into doing their dirty work, all for the benefit of the pimp. Banks met Grant when she was a teenager and many years younger than Grant, and he manipulated her into believing they were in a romantic relationship. She suffered extreme physical and sexual abuse from Grant, and he shot her in the stomach when she was pregnant with his child. Banks testified truthfully at Grant's trial and accepted responsibility for her role in the trafficking conspiracy. Finally, and most importantly, this Court should ask whether Grant was made to endure the humiliation of selling his body for money, the way he expected Banks, J.S., and K.C. to do. The answer

---

[18] *See United States v. Elijah Vines*, No. 1:17-cr-00160 (S.D. Ind. June 27, 2019) (imposing 480 months' imprisonment for defendant convicted at trial of trafficking one minor); *United States v. Richardo Leodoro Urbina*, No. 18-cr-51 (W.D. Mich. 2019) (imposing 480 months' imprisonment for defendant convicted at trial of trafficking three minors and one adult); *see also United States v. Marvarlus Snead*, Case No. 7:19-cr-00151-D (E.D.N.C. 2021) (imposing 35-year sentence for defendant convicted at trial of trafficking one minor).

[19] *See United States v. Brandon Jennings*, 5:18-cr-418-FL (E.D.N.C. 2020) (imposing multiple concurrent life sentences for defendant convicted at trial of four adult and two child victims); *United States v. Alston Williams*, No. 9:18-cr-80053-RLR (S.D. Fla. 2019) (imposing five life sentences for defendant convicted at trial of trafficking two minors and one adult); *United States v. Davis Mearis*, 4:19-524 (S.D. Texas 2019) (imposing life imprisonment for defendant convicted at trial of trafficking four minors and one adult); *United States v. Franshon Stapleton*, No. 18-cr-20028 (C.D. Ill. 2018) (imposing life imprisonment for defendant convicted after guilty plea of trafficking three adult women).

U.S. v. Grant
3:19-cr-00003-RRB

is no.

*Restitution*

Under 18 U.S.C. 2259, this Court must order restitution of at least $3,000 to J.S. based on Grant's creation and distribution of child pornography videos of her. This Court may also order restitution to both J.S. and K.C. based on their trafficking victimization. To date, however, the United States has not received any requests for restitution. If requests are received after the filing of this sentencing memorandum, the United States will promptly notify this Court and defense counsel.

Relatedly, this Court should impose a $5,000 Justice for Victims of Trafficking Act (JTVA) assessment under 18 U.S.C. § 3014.[20]

## CONCLUSION

Only a 50-year sentence of imprisonment will account for Grant's crimes and prevent him from harming vulnerable girls, women, rival gang members, and members of the public now and in the future. The recommended sentence is no greater than necessary to meet the relevant sentencing criteria.

---

[20] The Second Circuit in *United States v. Haverkamp*, 958 F.3d 145, 149 (2d Cir. 2020) held that the JTVA assessment applies on a per-offender, not per-count, basis. The United States is not aware of contrary Ninth Circuit precedent, and thus requests only one special assessment. If this Court determines that Grant is indigent, the special assessment will not apply. 18 U.S.C. § 3014(a) ("[T]he court shall assess an amount of $5,000 on any non-indigent person.").
U.S. v. Grant
3:19-cr-00003-RRB

Page 25 of 26
Case 3:19-cr-00003-RRB-MMS   Document 287   Filed 09/08/21   Page 25 of 26

RESPECTFULLY SUBMITTED September 8, 2021 at Anchorage, Alaska.

E. BRYAN WILSON
Acting United States Attorney

/s Jennifer Ivers
JENNIFER IVERS
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2021
a true and correct copy of the foregoing
was served electronically on:

James Wendt

/s Jennifer Ivers
Office of the U.S. Attorney

U.S. v. Grant
3:19-cr-00003-RRB