E. BRYAN WILSON
Acting United States Attorney

JENNIFER IVERS
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: jennifer.ivers@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> vs.<br><br>TRISTAN JAMAL GRANT,<br><br>    Defendant. | No. 3:19-cr-00003-RRB-MMS |

**ERRATA AND SUPPLEMENT TO GOVERNMENT'S SENTENCING MEMORANDUM**

The United States respectfully submits this errata and supplement to its sentencing memorandum filed at Docket 287. This supplement addresses the following: (1) restitution, (2) sentencing disparities, (3) defendant's PSR objections, (4) proposed conditions of supervised release, and (5) whether this sentence should run concurrently or consecutively to Grant's escape case.

## 1. Errata re: restitution

The United States incorrectly stated that this Court must order $3,000 restitution to J.S. pursuant to 18 U.S.C. § 2259. The current version of that statute, which requires at least $3,000 in restitution, went into effect December 7, 2018, shortly after Grant's production of child pornography, and is not retroactive. As a result, this Court should instead apply the prior version of the statute, which required mandatory restitution for the "full amount of the victim's losses" but did not set a $3,000 floor. 18 U.S.C. § 2259 (effective 1996 to December 6, 2018). The United States has attempted to obtain restitution information from J.S., but those attempts have been unsuccessful. If the United States receives restitution information, it will promptly inform this Court.

## 2. Sentencing disparity

The United States cited numerous sex trafficking cases in support of its request for a 50-year sentence. In addition to his sex trafficking offenses, Grant's child pornography offenses support a 50-year sentence. This Court should look at *United States v. William Patrick King* for comparison. Case No. 3:17-cr-00082-SLG. In that case, King was sentenced to an aggregate 43-year sentence for soliciting child pornography from a 17-year-old victim. He pled guilty to one count of production of child pornography in the District of Alaska and one count of attempted production of child pornography in the Middle District of Florida. *Id.* at Doc. 31; *United States v. William Patrick King*, 8:18-cr-00036, Doc. 22. He was sentenced to 420 months' imprisonment in each case, with 96 months to run consecutive. Case No. 3:17-cr-00082-SLG, Doc. 54; Case No. 8:18-cr-

00036, Doc. 61.

Grant's conduct is more aggravated than King's and justifies a slightly longer sentence. King's guideline range was only 300 months: Grant's is life. Case No. 3:17-cr-00082, Doc. 43. King entered plea agreements in both his cases, while Grant has failed to take any responsibility for his actions. Grant's victimization of J.S. was severe because he produced child pornography of J.S. performing sexual acts *with him*. And lastly, of course, J.S. was also victimized by Grant's sex trafficking. By comparison to King, a 50-year sentence is appropriate for Grant.

Finally, the United States Sentencing Commission has a helpful tool to assess sentencing disparity.[1] For defendants with the same primary guideline, offense level, and criminal history category as Grant, the tool calculates an average sentence of 418 months and a median sentence of 420 months. It should be noted, however, that this tool is less reliable for longer sentences because defendants sentenced to 470 months or more (including life) are all reported as 470 months. For the reasons stated above and in the Government's original filing, a 50-year sentence is appropriate here.

3. *Defendant's objections to the presentence report*

Grant made numerous objections to the presentence report, most of which were denied by the USPO. The United States agrees with the USPO's conclusions.

Grant objects to the use of his escape conviction to support an enhancement for obstruction of justice. Although that conviction supports the enhancement, Grant

---

[1] Available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

U.S. v. Grant
3:19-cr-00003-RRB-MMS

obstructed justice in many other ways that also justify the enhancement. Most obviously, as noted by the USPO, Grant instructed Marika Alex and Ajela Banks to delete his Snapchat account, which contained incriminating evidence. Marika Alex pled guilty to Tampering with Documents and Proceedings and admitted the following factual basis for her plea:

> On December 12, 2018, Tristan Grant shot Ajela Banks. During the investigation of this shooting and other alleged criminal acts committed by Grant by the Federal Bureau of Investigation and other federal and state law enforcement agencies, Grant contacted Banks and Alex in an attempt to have them delete items from his Snapchat account. Grant's user name for the Snapchat account was "gingerbreadslim." Among the items located on the "gingerbreadslim" Snapchat account were images and videos of Grant in possession of firearms, as well as images and videos of Grant engaged in sexually explicit conduct with minors that he was alleged to have been sex trafficking. The defendant participated in the deletion of the images knowing that they showed criminal conduct by Grant, and with the intent to assist Grant in hiding that information from law enforcement for law enforcement's use in an official proceeding.

Grant, of course, denies this, but the above factual basis shows by a preponderance of evidence that Grant was "directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding."[2]

Even if such evidence were inadequate, Grant also obstructed justice through his repeated attempts to contact and manipulate the witnesses and victims in this case, as described in the Government's sentencing memo. Doc. 287. That conduct involved Grant

---

[2] U.S.S.G. § 3C1.1, note 4(D).

U.S. v. Grant
3:19-cr-00003-RRB-MMS

Page 4 of 8
Case 3:19-cr-00003-RRB-MMS   Document 339   Filed 12/09/21   Page 4 of 8

attempting multiple times to suborn perjury, for example by telling J.S. "you need to tell them that you told me that you was 18, and I never took you on no damn dates or got no money from you that's it."[3] By contrast, J.S. testified truthfully that Grant knew she was under 18, that he took her on at least one date, and that he took the money from her after that date. Thus Grant encouraged J.S. to lie to protect him.

Grant has focused obsessively on J.S. even after trial. After his conviction, Grant began a campaign to convince J.S. to recant her testimony. Grant repeatedly contacted J.S.'s mother through phone calls and a letter. Doc. 245. In one call to J.S.'s residence, the defendant kept a young child on the phone, repeatedly asking to speak to his mother, as the child repeatedly tried to hang up. *Id.* Grant made several calls to third parties, recruiting them to contact J.S. and her mother in order to get J.S. to recant her testimony. In multiple calls with third parties Grant attempted three-way calls to J.S. *Id.*

When these attempts to contact J.S. failed, Grant asked his associate Julissa Carter to "slide" over to J.S.'s residence. *Id.* Carter met J.S.'s mother at the residence and repeatedly asked for J.S., only leaving when J.S.'s mother called Hiland to prove that J.S. was incarcerated and not at the residence. *Id.* Carter appeared ready to "fight," causing J.S.'s mother concern that, had J.S. been in residence, Carter would have started a fight. *Id.* After Carter went to her mother's home, J.S. contacted law enforcement. J.S. has since left the state.

This conduct also obstructed justice, which can occur "with respect to . . .

---

[3] *See id.*, note 4(B) ("committing, suborning, or attempting to suborn perjury").

U.S. v. Grant
3:19-cr-00003-RRB-MMS

sentencing."[4] Grant's attempts to destroy evidence, convince witnesses to lie, and to intimidate them after trial all qualify as obstruction of justice, and the enhancement is properly applied.

### 4. Conditions of supervised release

Proceedings remain pending in the Magistrate Court over the Government's motion for a three-year protective order based on Grant's harassment of J.S. Given Grant's pre- and post-trial communications with victims, the United States asks that this Court to order Grant not to contact victims or their families as a condition of supervised release.

### 5. Consecutive vs. concurrent sentences

Grant was previously sentenced to 36 months' imprisonment in his escape case. *See United States v. Tristan Grant*, Case No. 3:21-cr-00027-TMB-MMS, Doc. 58. This Court is familiar with the basic facts of that case, also found at 3:21-cr-00027-TMB-MMS, Docket 34. Judge Burgess declined to decide whether that sentence should be consecutive or concurrent to his sentence in this case. The sentences should run consecutively for the following reasons.

First, only a consecutive sentence will have any deterrent effect on Grant. His escape was not a spur of the moment decision. Jail calls show he was planning his escape before his attorney even filed the bail request. On February 10, 2021 he called Julissa Carter and told her "I always know what I'm doing" and "I might be out there, loose as a goose." In the same call he told Carter "I ain't got nothing to lose." Only consecutive sentences will

---

[4] U.S.S.G. § 3C1.1.

U.S. v. Grant
3:19-cr-00003-RRB-MMS

show Grant that a blatant escape from custody does, in fact, have consequences.

Grant may argue that he is already being punished for his escape through the obstruction of justice enhancement, so consecutive sentences are not necessary for deterrence. That argument fails because Grant obstructed justice in many other ways, described above, in addition to escaping. Moreover, the obstruction enhancement is largely symbolic because Grant's offense level is already above 43.

Finally, consecutive sentences are necessary to deter others. If time is not imposed consecutively, defendants like Grant, those who have committed the worst offenses and are subject to the highest penalties, will have no incentive not to escape. In fact, if a defendant knows they will not face additional jail time and that they face a significant sentence, they will have every incentive to escape. Counterintuitively, the very worst offenders, those who society has the greatest interest in detaining, will face no practical repercussions for escape. As Grant put it, they will have nothing to lose. For those reasons, concurrent sentences are necessary and appropriate.

//

//

//

//

//

//

//

RESPECTFULLY SUBMITTED December 9, 2021 at Anchorage, Alaska.

E. BRYAN WILSON
Acting United States Attorney

/s Jennifer Ivers
JENNIFER IVERS
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2021
a true and correct copy of the foregoing
was served electronically on:

James Wendt

/s Jennifer Ivers
Office of the U.S. Attorney

U.S. v. Grant
3:19-cr-00003-RRB-MMS