```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF ALASKA


 UNITED STATES OF AMERICA,      )
                                )
           Plaintiff,           )
                                )
      vs.                       )
                                ) CASE NO. 3:19-cr-00003-RRB-MMS
 TRISTAN GRANT,                 )
                                )
           Defendant.           )
 _____)
```

PARTIAL TRANSCRIPT OF MOTION FOR RESTRAINING ORDER
(Public Proceedings)
**BEFORE THE HONORABLE MATTHEW M. SCOBLE, U.S. MAGISTRATE JUDGE**
Thursday - June 24, 2021
2:04 p.m. - 2:41 p.m.
Anchorage, Alaska

**FOR THE GOVERNMENT:**
    Office of the United States Attorney
    BY:  KAYLA DOYLE
    222 West 7th Avenue, RM 253, #9
    Anchorage, Alaska 99513
    907-271-1211

**FOR THE DEFENDANT:**
    Law Offices of James Alan Wendt
    BY:  JAMES A. WENDT
    425 G Street, Suite 610
    Anchorage, Alaska 99501
    907-258-9100

Clerk in Attendance: Holly Rhoden

_____

**STACY M. BALDWIN**
**Realtime Certified Reporter**
**Federal Official Court Reporter**
222 West 7th Avenue, #4
Anchorage, Alaska 99513
Transcript Produced from the Digital Recording

1     (Call to Order of the Court at 2:04 p.m.)
2     DEPUTY CLERK:  All rise.  His Honor, the Court, the
3  United States District Court for the District of Alaska is now
4  in session, the Honorable Matthew M. Scoble presiding.
5     Please be seated.  Your Honor, we're on record in Case
6  No. 3:19-cr-00003-RRB-MMS, *The United States of America versus*
7  *Tristan Grant*.
8     Counsel, please identify yourselves for the record.
9     MS. DOYLE:  Kayla Doyle for the United States.
10    MR. WENDT:  James Wendt for Mr. Grant.
11    THE COURT:  All right.  Good afternoon, Ms. Doyle.
12 Good afternoon, Mr. Wendt.  Good afternoon to you, Mr. Grant.
13 Mr. Grant is present before the Court.  He's in custody.
14    All right.  We have a few matters to cover today.
15 There is the matter of a long-term restraining order.  The
16 government filed a motion seeking a long-term restraining order
17 subsequent to that due to some witness unavailability and I
18 believe also issues getting counsel available for one of the
19 witnesses.  The government subsequently moves to continue that
20 hearing.
21    And then there's a second but related issue on the
22 restriction of Mr. Grant's communications.  But I think before
23 we take any of that up, there's an issue with regard to status
24 of counsel.  Do I have that right, Mr. Wendt?
25    MR. WENDT:  I don't understand the issue with status

```
 1  of counsel, quite frankly.
 2           THE COURT:  All right.  I believe, it's the Court's
 3  understanding that Mr. Grant wants to have his counsel
 4  relieved, and have successor counsel appointed.
 5           Mr. Grant, maybe I have that wrong, am I wrong?
 6           THE DEFENDANT:  There's so much been going on I don't
 7  even -- I'm lost.
 8           THE COURT:  Okay.
 9           THE DEFENDANT:  I know I wrote a letter.
10           THE COURT:  Uh-huh.
11           THE DEFENDANT:  About some issues that I have.  I
12  don't remember if I asked to relieve my counsel -- there's been
13  so much going on, I can't -- I can't remember.
14           THE COURT:  Okay.  All right.  Do you want to take a
15  minute and talk to your lawyer and make a decision about
16  whether you want -- whether you want the Court to take that up?
17           THE DEFENDANT:  I still would like to speak to the
18  Court about status of counsel, though.
19           THE COURT:  All right.  Well, it sounds like we need
20  to have a hearing so we can do that.
21           THE DEFENDANT:  Okay.
22           THE COURT:  So in that case, Ms. Doyle, if you don't
23  mind, let's have everybody step out and we'll go into a sealed
24  hearing and Mr. Grant can let the Court know what his concerns
25  are.
```

```
 1              MR. WENDT:  Does the Court want me to remain?
 2              THE COURT:  Why don't you remain, Mr. Wendt.  I'll
 3   have a conversation with Mr. Grant and then I'll ask you to
 4   step out.
 5              MR. WENDT:  All right.
 6              THE DEFENDANT:  He can stay.
 7              (Proceedings took place that are not included
 8              in this partial transcript, after which,
 9              proceedings continued as follows:)
10              DEPUTY CLERK:  We're back on the public record.
11              THE COURT:  All right, everyone, thank you for your
12   patience.
13              Ms. Doyle, one thing that came up during the sealed
14   hearing is that Mr. Grant has some concerns about discovery
15   that he has not been able to review and I understand that a lot
16   of the discovery in this case has been subject to a protective
17   order.
18              Now that his trial has passed, I don't know and I'm
19   not expressing an opinion on this, I don't know if any of that
20   previously protected discovery could now be unprotected.  So
21   what I'm going to do is ask you to meet and confer with
22   Mr. Wendt and if there's any way to unprotect discovery or in
23   any other way facilitate Mr. Grant's access to it, I just ask
24   the parties to try to work that out.  All right?
25              MS. DOYLE:  Yes, Your Honor, thank you.
```

1   THE COURT: All right. Thank you.
2   Okay. So let's see, regarding the restraining order
3   issue. At Docket 249 the Court granted a temporary restraining
4   order prohibiting Mr. Grant from contacting minor victim
5   J.A. -- I said J.A., but now I feel like it's J.S.
6   MR. WENDT: J.S., yes.
7   MS. DOYLE: J.S., Your Honor.
8   THE COURT: It is J.S. Okay. -- J.S. or her
9   immediate family, either directly or indirectly. By statute
10  that temporary restraining order expires 14 days from the date
11  of issuance. So it will expire on July 7th absent further
12  order from the Court. There was a separate but related issue
13  regarding Mr. Grant's access to various means of communication,
14  and this Court concluded that, based on the pleadings submitted
15  by the government that, at least temporarily, it would be
16  appropriate to also limit Mr. Grant's use of the phone,
17  internet, and so forth. The restriction on his communications
18  is not controlled by statute in the same sense that the
19  restraining order is.
20  Nonetheless, I don't want to make it an indefinite,
21  unreviewable order. So my intention, and I'd be happy to hear
22  from the parties on this, but my intention would be just to
23  line up the restriction on communications with the issue of the
24  restraining order. So -- I know that it's the government's
25  request to come back in a few days to take up the issue of

1  whether or not the temporary restraining order will become a
2  permanent restraining order.  And my suggestion would be that
3  we just marry up the issue the restriction on communications
4  with the restraining order issue and we hear them both at the
5  same time the next time we're back here.
6           Does that work for the government, Ms. Doyle?
7           MS. DOYLE:  Yes, Your Honor.
8           THE COURT:  Mr. Wendt, any comments on that?
9           MR. WENDT:  It works.  But I do have a comment, Your
10 Honor.
11          THE COURT:  By all means.
12          MR. WENDT:  Based on my conversation with my client
13 I'm not sure what the temporary restraining order covers.  It
14 certainly covers any contact with J.S. or her immediate family
15 members.
16          THE COURT:  Yes, sir.
17          MR. WENDT:  And the Court mentioned there is a limited
18 use on his phone and internet; is that correct?
19          THE COURT:  Yes, sir.
20          MR. WENDT:  Okay.  Apparently, my client informs me
21 that he was notified by Lieutenant Mercer, the shift
22 supervisor, last night in the jail that his movement -- there
23 was a total restriction on any movement.  He's not allowed out
24 of his cell ever, except to come to court when they bring him.
25 He hasn't had a shower.  He can't go to the law library.  I

1  guess he'd like to do that.  He's basically stuck in his cell
2  and I don't think that is what the Court had intended.  Or call
3  his family, he would like to call his family.
4           THE COURT:  All right.  So the -- it was not the
5  Court's intention that his movements within the jail be
6  restricted.  I, frankly, have no opinion on that.
7           The difficulty that presents whenever the Court tries
8  to limit an inmate's access to the phone is theoretically an
9  inmate can only make calls using their own PIN.  So the PIN can
10 be blocked, the inmate can't make a call.  Sounds simple
11 enough.  The problem, of course, is PINS are fungible and one
12 inmate uses another's PIN precisely to frustrate those sorts of
13 restrictions.  There's no way for the Court, given the way that
14 the Securus technology functions, to stop an inmate from making
15 calls using another inmate's PIN absent simply blocking them
16 from using the phones altogether.  So that's the difficulty the
17 Court has.
18          So it was not my intention to limit his movement
19 within the jail.  It is my intention to block him from having
20 access to the phone, at least until we can take this matter up
21 and decide whether that will be a long-term restriction or a
22 temporary one.
23          MR. WENDT:  Well, he feels he should be allowed to
24 call his family.
25          THE COURT:  I appreciate that.  And if there were a

1  way that I could structure the restriction to sort of carve out
2  a call to his family, I would do that.  I, unfortunately, only
3  have a fairly blunt instrument in terms of restricting his
4  phone calls and that's blocking them altogether.
5        Mr. Grant, you had something you wanted to say?
6        THE DEFENDANT:  They -- it says J.S. and J.S.'s mom,
7  right?
8        THE COURT:  Family, yes, sir.
9        THE DEFENDANT:  Well, family.  The only person that
10 I've ever spoken to --
11       THE COURT:  Sir, you probably don't want to talk about
12 this on the record.
13       THE DEFENDANT:  What I'm saying, she only has one
14 number.  And J.S., if -- to my understanding is incarcerated.
15 I don't even understand all this.  So how can I speak to her if
16 she's in Hiland Mountain.  And her mom, if -- that's one number
17 and they restrict -- they restrict and block my numbers.  They
18 listen to all my phone conversations, as you know.  So it's not
19 like they don't monitor all my phone conversations anyway or
20 whatever numbers I've been calling.
21       THE COURT:  Sure.
22       THE DEFENDANT:  Because just, prime example, last
23 night, yesterday when I get off the phone with my attorney, I
24 magically can't call my family out of state anymore.  They
25 restricted that number.  So that is -- I don't -- I just

```
 1  don't -- if they're saying two people, they already monitor my
 2  calls to who I can call and who I can't call.
 3          THE COURT:  I understand that, sir.  And this will be
 4  very good issues to bring up when we come back for a further
 5  hearing on whether or not the restrictions on your calls will
 6  be long term or not.  But talk to your lawyer about that in
 7  between now and then and we can take that up when we're back
 8  here in a few days.  Okay.
 9          All right.  Anything else from the defense on the
10  question of the temporary restraining order or what I'll call
11  the temporary restriction on Mr. Grant's communications?
12          MR. WENDT:  I don't want to beat a dead horse, but
13  can't he take a shower?  Can't the Court order something so he
14  can at least go have a shower?
15          THE COURT:  Yeah.  Let me ask the marshals to look
16  into that.  I don't -- based on the -- this Court's order
17  regarding his communications, I don't see any reason that he
18  shouldn't be able to shower or leave his cell.  That was not
19  the Court's intention.  So can I ask the marshals to follow up
20  with the jail and see about getting that taken care of?
21          MARSHAL:  Yes, sir.
22          THE COURT:  All right.  Thank you very much.
23          So, Mr. Wendt, if that's not resolved, bring it back
24  before the Court's attention.  I don't want to -- this isn't
25  meant to be punitive.  I don't want to -- I don't want to cause
```

1  Mr. Grant any unnecessary suffering or discomfort.  My
2  intention is only to protect everybody else out there.  Okay?
3              MR. WENDT:  Yes, I understand.
4              THE COURT:  All right.
5              All right.  Anything else on this issue, Mr. Wendt?
6              MR. WENDT:  This is -- we're not discussing the
7  long-term --
8              THE COURT:  We're going to come back for that.  We're
9  talking short term right now.
10             MR. WENDT:  No, nothing at this time.
11             THE COURT:  All right.  Thank you, sir.
12             Ms. Doyle, anything else on this subject?
13             MS. DOYLE:  No, Your Honor.  Thank you.
14             THE COURT:  All right.  Ms. Doyle, should we talk
15 scheduling now or do you want to get with your witnesses and
16 propose a date for a continued hearing?
17             MS. DOYLE:  Your Honor, if we could get with the
18 witnesses.  It sounds like counsel's close to being appointed
19 and that should facilitate it and then we can get everybody on
20 the same page.
21             THE COURT:  Perfect.  Yeah, once you have some dates
22 in mind, just meet and confer with the defense, and just make
23 the appropriate filings for proposed dates.
24             MS. DOYLE:  Yes, Your Honor.  Thank you.
25             THE COURT:  All right.  You bet.  Anything else we can

```
 1  do today for the government?
 2          MS. DOYLE:  No, Your Honor.  Thank you.
 3          THE COURT:  All right.  Anything else from the
 4  defense?
 5          MR. WENDT:  Yes, Your Honor.  I do have some things to
 6  discuss.
 7          THE COURT:  Okay.
 8          MR. WENDT:  Well, the one thing that we have discussed
 9  is getting access at least to the phone conversations, and I
10  will talk to the government regarding that.  Including --
11          THE COURT:  The new ones relevant to the restraining
12  order and so forth?
13          MR. WENDT:  Correct.
14          THE COURT:  Yes, sir.
15          MR. WENDT:  And I did speak with the Assistant U.S.
16  Attorney's Office on this case, Ms. Ivers, last night.  I told
17  her we have an interview with J.S.'s mother and that I would
18  provide that to her today.
19          THE COURT:  Okay.
20          MR. WENDT:  I'm holding it in my hands, but I'm a
21  little annoyed that I'm giving them things but they haven't
22  given -- but I will provide it to them.  But I just want it on
23  the record that I'm giving them things.  I would like to get
24  something in return as soon as possible.
25          THE COURT:  Okay.
```

```
 1              MR. WENDT:  Okay.
 2              THE COURT:  I appreciate your annoyance.
 3   Unfortunately, it's not in the federal criminal rules.  Nothing
 4   I can do about annoyance.
 5              But get with the government.  If there is reciprocal
 6   discovery I'm sure the government will provide it.  Especially
 7   with regard to the instant phone calls that are the subject of
 8   the restraining order and so forth.
 9              MR. WENDT:  And regarding a hearing on the long-term
10   issue, Judge.
11              THE COURT:  Yes, sir.
12              MR. WENDT:  We would like to have witnesses as well.
13              THE COURT:  Of course, you're more than welcome to do
14   so.
15              MR. WENDT:  We would like to subpoena J.S.'s mother.
16   I have her name; I don't know if I should say it in open court.
17              THE COURT:  There's no need to put it on the record
18   that I can see.
19              MR. WENDT:  Okay.  I can say her first name.
20              THE COURT:  That would be fine.
21              MR. WENDT:  Her first name is Jacqueline, same last
22   name as J.S.
23              THE COURT:  Okay.
24              MR. WENDT:  And we would like a subpoena duces tecum
25   where she brings in these letters that are mentioned in the
```

```
 1  affidavit.
 2          THE COURT:  Okay.
 3          MR. WENDT:  So those, at a minimum, are the things
 4  that we want.
 5          THE COURT:  Okay.  So just make the appropriate
 6  application, a Rule 16 application.  And I'm not going to
 7  indicate a ruling but that sounds like the kind of thing I
 8  would sign off on if you need a judicial signature.
 9          MR. WENDT:  Thank you, Your Honor.
10          THE COURT:  All right.
11          MR. WENDT:  My client has raised the issue -- his aunt
12  has mentioned -- I don't believe his aunt needs a subpoena.  I
13  can just tell the other side that this is a person we might
14  want to have testify telephonically.  Would that be an issue
15  with the Court?
16          THE COURT:  Is she out of state?
17          MR. WENDT:  Yes.  They're in Tennessee?
18          THE DEFENDANT:  No, Virginia.
19          THE COURT:  All right.  If she is out of state then I
20  would be inclined to -- to grant a request that she testify
21  telephonically.
22          MR. WENDT:  Okay.  I can issue -- I can file something
23  on that as well.
24          THE COURT:  Yes, please do.
25          MR. WENDT:  Okay.
```

```
 1            THE COURT:  Whether or not you subpoena her, it's up
 2   to you.  But obviously, if for some reason she's not available
 3   and she's not under subpoena, the Court will be less inclined
 4   to continue the hearing, but it's up to you.
 5            MR. WENDT:  Okay.  All right.
 6            THE COURT:  All right.
 7            MR. WENDT:  I think that's all I have right now.
 8            THE COURT:  Is that all?
 9            MR. WENDT:  Yes.
10            THE COURT:  All right.  Thank you, sir.
11            All right.  Ms. Doyle, I'll give you the last word.
12            MS. DOYLE:  Nothing to add, Your Honor.  Thank you.
13            THE COURT:  All right.  Mr. Grant, any questions,
14   comments, or concerns?
15            THE DEFENDANT:  I'm not trying to be funny or
16   anything -- for real, like anything like that.
17            THE COURT:  That's okay.
18            THE DEFENDANT:  But I feel like I'm being harassed.
19   Or this is -- I mean, I done already went to trial, been
20   convicted.  I feel -- I feel like -- but I know -- I know I got
21   to take the steps to go through the proper process and all this
22   other stuff and show what I'm saying, but I'm -- I feel like --
23   and I don't just want to throw any names out there, but there's
24   agents and TFOs that's been doing this since the beginning of
25   my case and nothing has happened.
```

1     Granted this is my third lawyer and that's why --
2  that's another reason why I didn't want to get another lawyer.
3  But it's not -- because he's doing, you know, but I been -- I'm
4  for real.  I don't know what to do.  I feel like I'm being
5  harassed myself and what can I do about this -- they putting --
6  what more can I do?
7     THE COURT:  All right.  Sir, I appreciate that and I'm
8  sure this is not a good place for you to be.  And sincerely,
9  I'm sorry that you're in the place that you're in.
10    We are going to have another hearing on this matter
11 and any concerns you have about whether or not a restraining
12 order, a limitation on your communications, any concerns that
13 you have about whether or not that's appropriate, your lawyer
14 knows exactly how to make those arguments to the Court.  And I
15 haven't made up my mind about what I'm going to do in the long
16 term.  This is only temporary for right now.  Okay?
17    THE DEFENDANT:  Just one more, who do I speak to if --
18 it's my understanding -- I don't know for sure, but every time
19 I ask somebody, no one can seem to get me a whole answer.
20    THE COURT:  Okay.
21    THE DEFENDANT:  Who do I speak to about, once again,
22 about -- if I have to get a court order to receive jail phone
23 conversations, how can anyone else get in any of my jail --
24 even though I don't -- I know they're listening to my jail
25 phone conversations, so I'm not worried about that, but I'm

1  just saying, how can just outside entities from DOC just at any
2  given time just, oh, yeah, let me listen to his jail calls, but
3  they don't have to get a warrant or a court order, but I have
4  to?
5          THE COURT:  Sure.
6          THE DEFENDANT:  It doesn't -- for everything I've
7  looked up legally-wise it doesn't make any sense to me.  They
8  said that it's supposed to be search warrants for that and I
9  haven't seen a search warrant yet for none of my phone calls.
10         THE COURT:  All right. Sir, I appreciate that. You
11 know, talk to your lawyer about that.  If you feel as though
12 there is -- there is a legal issue that there is -- that
13 somebody invaded your privacy in some way or another your
14 lawyer knows exactly how to make the appropriate motions to try
15 to address that.  Okay?
16         THE DEFENDANT:  All right.  Thank you.
17         THE COURT:  All right.  Thank you all very much.  We
18 are in recess.
19         DEPUTY CLERK:  All rise.  This matter is adjourned.
20 This Court now stands adjourned subject to call.
21         (Whereupon, the Court adjourned at 2:41 p.m.)
22                         --oo0oo--
23
24
25

CERTIFICATE

I, Stacy M. Baldwin, Federal Official Court Reporter in and for the United States District Court of the District of Alaska, do hereby certify that the foregoing transcript is a true and accurate transcript from the digital recording in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated January 31, 2023.


/s/ Stacy M. Baldwin
STACY M. BALDWIN, RCR, RMR
FEDERAL OFFICIAL COURT REPORTER