1                      UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF ALASKA

2

3 UNITED STATES OF AMERICA,  )
                         )

4         Plaintiff,     )
                         )

5     vs.                )
                         ) CASE NO. 3:19-cr-00003-RRB-MMS

6 TRISTAN GRANT,          )
                         )

7         Defendant.     )
  _____  )

8

9       TRANSCRIPT OF MOTION FOR TEMPORARY RESTRAINING ORDER
    **BEFORE THE HONORABLE MATTHEW M. SCOBLE, U.S. MAGISTRATE JUDGE**

10                 Tuesday - July 13, 2021
                12:08 p.m. - 12:46 p.m.

11                 Anchorage, Alaska

12

    **FOR THE GOVERNMENT:**

13       Office of the United States Attorney
       BY:  KAYLA HAYES DOYLE

14       BY:  JENNIFER LOWE IVERS
       222 West 7th Avenue, RM 253, #9

15       Anchorage, Alaska 99513
       907-250-7710

16
    **FOR THE DEFENDANT:**

17       Law Offices of James Alan Wendt
       BY:  JAMES A. WENDT

18       425 G Street, Suite 610
       Anchorage, Alaska 99501

19       907-258-9100

20  Clerk in Attendance:  Irma Hernandez

21  _____

22                 **STACY M. BALDWIN**
             **Realtime Certified Reporter**

23           **Federal Official Court Reporter**
            222 West 7th Avenue, #4

24            Anchorage, Alaska 99513
       Transcript Produced from the Digital Recording

25

1          (Call to Order of the Court at 12:08 p.m.)

2          DEPUTY CLERK:  All rise.  His Honor, the Court, the

3  United States District Court for the District of Alaska is now

4  in session, the Honorable Matthew M. Scoble presiding.

5          Please be seated.  Your Honor, we're on record in Case

6  No. 3:19-cr-00003-RRB-MMS, *United States of America versus*

7  *Tristan Grant*.

8          Counsel, please identify yourselves for the record.

9          MS. IVERS:  Jennifer Ivers for the United States.

10          MS. DOYLE:  Kayla Doyle for the United States.

11          MR. WENDT:  James Wendt for Mr. Grant.

12          THE COURT:  All right.  Good afternoon, Ms. Ivers,

13  Ms. Doyle.  Good afternoon to you, Mr. Wendt, and good

14  afternoon to you, Mr. Grant.

15          Okay.  We're on today for a status/motion hearing on

16  the temporary restraining order.  Let's see, the parties filed

17  status reports respectively at Docket 255 and 256.

18          In the government's status report at 255 they indicate

19  that at some considerable effort counsel for Ms. Carter has

20  been secured.  So she is now represented.  And the government

21  indicates that they're going to be ready to proceed for further

22  hearing on July 13th, 21st, or 22nd to address the need for a

23  long-term protective order.

24          In their status report at 256, the defense indicates a

25  number of issues with the conditions of Mr. Grant's confinement

1 and also raises -- expresses a desire to put off the hearing on

2 the long-term restraining order to allow sufficient time for

3 some witnesses to be subpoenaed.  The defense also notes that

4 there's a bright note in that it appears that some issues

5 regarding discovery are being resolved.

6         So anything to add on the status, Ms. Ivers,

7 Ms. Doyle?

8         MS. IVERS:  Your Honor, we have Special Agent Goeden

9 and TFO Torres here ready to testify.  And I would just ask

10 that we take the opportunity to hear their testimony today,

11 because they're going out of town after this.  And so we're

12 ready to go with respect to those witnesses and perhaps if the

13 defense has additional witnesses he wishes to call, we can

14 address that on Friday.

15         THE COURT:  Sure.  We only have an hour today, but I'd

16 be happy to take up what we can.

17         MS. IVERS:  I think we can get through it.

18         THE COURT:  Okay.  Let me check in with the defense,

19 Mr. Wendt.

20         MR. WENDT:  Regarding other issues -- regarding the

21 phone calls that was one thing in the status report.

22         THE COURT:  Right.  Mr. Grant's lack of access to

23 phone calls.  Is that -- when you say "phone calls," what do

24 you mean?

25         MR. WENDT:  The phone calls that have been tapped and

1  provided to the government that I have not received.

2          THE COURT:  Okay.

3          MR. WENDT:  The government informs me that they are

4  still in discovery and still being processed and they have

5  indicated that they will try to get them to me before the end

6  of the day Thursday.

7          THE COURT:  Okay.

8          MR. WENDT:  It is problematic.  My understanding is we

9  have witnesses here who will be testifying about the contents

10 of the phone calls, and they're phone calls that I haven't had

11 the opportunity to listen to.

12         THE COURT:  All right.  Well, let's -- let me talk to

13 the government about that.  Are either of your witnesses going

14 to be talking about these phone calls?

15         MS. IVERS:  Yes.

16         THE COURT:  Okay.  Well, it certainly seems reasonable

17 that Mr. Wendt would be able to review them prior to the

18 witnesses' testimony.

19         MS. IVERS:  I recognize that and that's why -- I mean

20 we're kind of in a tricky spot, because they're in the sort of

21 discovery limbo in our office and we need to get these

22 witnesses' testimony today.  So that's why I proposed -- I

23 mean, I'm not really sure how Mr. Wendt would use those calls,

24 if it's his client's statements.  Although, to be fair we're

25 assuming that all the evidence was (indiscernible).

1           THE COURT:  I'm sorry, say that again.

2           MS. IVERS:  I'm assuming that the evidence rules,

3    we're not going to be strictly applying the evidence rules for

4    purposes of this hearing?

5           THE COURT:  And there aren't, but, you know, there's

6    still got to be some indicia of reliability and rule of

7    completeness and all that.

8           MS. IVERS:  Yeah, I understand what you're saying.

9    That's why -- that's the best compromise I could come up with,

10   was to try to get those -- so that he could bring up any issues

11   he had.

12          THE COURT:  When do your witnesses go out of town?

13          MS. IVERS:  Tomorrow.

14          THE COURT:  For how long?

15          MS. IVERS:  Until the 20th.  (Indiscernible.)

16          THE COURT:  Well, I certainly appreciate -- I

17   appreciate the government trying to move this along.  And

18   obviously you can't control your witnesses' schedule.  I also

19   understand Mr. Wendt's desire to be able to review these phone

20   calls prior to the testimony of witnesses who will be

21   discussing these very phone calls.  I think that's a reasonable

22   request.

23          So, Mr. Wendt, if you want to move to continue the

24   evidentiary hearing until after the government's witnesses

25   return, we can reschedule it to that point.  I would --

1          MR. WENDT:  We would like to do that.

2          THE COURT:  Okay.

3          MR. WENDT:  But there is one other issue, Judge.  If I

4    could -- just a general issue.  My client's still -- he's had

5    one shower now.

6          THE COURT:  And I do want to take up his terms -- the

7    conditions of his confinement.

8          MR. WENDT:  We got to get some loosening here.

9          THE COURT:  I appreciate that.  And I do want to talk

10   about the conditions of his confinement, but let's just chop

11   the tree in front of us.

12         MR. WENDT:  Yes.  Thank you.

13         THE COURT:  Okay.  So as far as a date for a

14   continuance, I am barely available on the 22nd and I'm not

15   available starting on the 23rd for the rest of July.  So could

16   we try to get in on the 21st?

17         MR. WENDT:  I'm available on the 21st.

18         THE COURT:  Okay.

19         MS. IVERS:  I have a trial the following week.  So I

20   have quite a bit of witness prep scheduled that day.

21         I could do -- you are available that day?

22         MS. DOYLE:  I am.  Afternoon, I'm available on the

23   21st.

24         THE COURT:  On the 21st?

25         MS. DOYLE:  And I can do that.

 1          THE COURT:  All right.  Let me just pull up my

 2  calendar.

 3          If we do come back on the 21st, Ms. Ivers, how many

 4  witnesses do you expect for the government -- I should say, how

 5  much time do you expect for the government's case?

 6          MS. IVERS:  Less than an hour.

 7          THE COURT:  Less than an hour.  And, Mr. Wendt, how

 8  many witnesses would you expect and how much time would you

 9  expect to need?

10          MR. WENDT:  Is that going to be the sole date for the

11  long-term order, or we will be reconvening after that?

12          THE COURT:  Well, ideally we get it all done on that

13  day, if we can.  If we can't, then we'll come back for another

14  day.

15          MR. WENDT:  I would think it would take all afternoon.

16          THE COURT:  You're thinking all afternoon?

17          MR. WENDT:  Yeah.

18          THE COURT:  If we could get a two-hour, three-hour

19  block.

20          DEPUTY CLERK:  (Indiscernible.)

21          THE COURT:  Okay.

22          DEPUTY CLERK:  You only have 9:00 to 11:00.

23          THE COURT:  On the --

24          DEPUTY CLERK:  On the 21st.

25          THE COURT:  Okay.

1          MS. DOYLE:  Your Honor, I have a training for that.  I

2     can skip the training and do 9:00 to 11:00.

3          THE COURT:  Are you sure?

4          MS. DOYLE:  Yes, Your Honor.

5          THE COURT:  Thank you.  That's very helpful.  I would

6     say 9:00 to 11:00, that would be a hard stop at 11:00, but we

7     will make as much progress as we can, July 21st, 9:00 to 11:00

8     for a continued evidentiary hearing.  And I will make the

9     finding that there's good cause to continue the temporary

10    restraining order until that date.

11         All right.  Anything else to take up on the issue of

12    the temporary/permanent restraining order from the government?

13         MS. IVERS:  Yes, Your Honor.  Ms. Carter is

14    represented today with counsel.  The government's initial

15    request was that the temporary restraining order apply to

16    Ms. Carter, in addition to Mr. Grant.  So the government is now

17    asking that this Court order Ms. Carter not to contact J.S. or

18    her family.  And then she does have an attorney and so if this

19    Court issues a long-term protective order, I think it would be

20    appropriate for the government to simply notify Ms. Carter's

21    attorney that that was ordered and then she could inform her

22    client so that she doesn't have to come back to the hearing

23    next week.

24         THE COURT:  That sounds reasonable to me.

25         Let's see, Ms. Weidner-Tafs, good afternoon.

1          MS. WEIDNER-TAFS:  Good afternoon, Your Honor.

2          THE COURT:  Go ahead and step to the microphone.

3          MS. WEIDNER-TAFS:  I have a CJA23 financial affidavit

4     filled out by Ms. Carter.

5          THE COURT:  And we need to have you formally

6     appointed?

7          MS. WEIDNER-TAFS:  Yes.

8          THE COURT:  All right.  Let's take care of that before

9     we do anything else.

10         MS. WEIDNER-TAFS:  All right.  May I approach?

11         THE COURT:  Yes, please do.

12         Ms. Carter, I do find that you are eligible for the

13    appointment of counsel under the Criminal Justice Act and I

14    will appoint Cristina Weidner-Tafs to represent you.

15         MS. WEIDNER-TAFS:  And if that could be effective as

16    of last Friday, Your Honor, the --

17         THE COURT:  All right.

18         MS. WEIDNER-TAFS:  -- the 9th, I believe it was.

19         THE COURT:  I will make that nunc pro tunc to July

20    9th.

21         MS. WEIDNER-TAFS:  Thank you, Your Honor.

22         Ms. Carter was subpoenaed here today.  I believe that

23    was just an effort to get her here before the Court, but I

24    understand that she's not going to be asked to testify at the

25    evidentiary hearing, and we would object -- I would advise her

```
 1    not to testify.  And so I don't know -- I just want that on the
 2    record in case there's any further indication that they might
 3    want to be subpoenaing her to the next hearing.
 4             THE COURT:  Okay.  Was the subpoena from the
 5    government?
 6             MS. IVERS:  Yes.
 7             THE COURT:  Okay.  And do you want Ms. Carter to be
 8    present at the next hearing?
 9             MS. IVERS:  Now that she has counsel, if this Court
10    orders her not to contact J.S. and her family today, I don't
11    see any reason to have her present at any future hearings.
12             THE COURT:  All right.  So no need to address the
13    subpoena issue at this time.  She did appear today.  I'll note
14    for the record that Ms. Carter is present in the gallery.  So
15    she has complied with the subpoena that was issued for today's
16    purposes.
17             Go ahead, Ms. Weidner-Tafs.
18             MS. WEIDNER-TAFS:  So she will be released from the
19    subpoena.  And then I was going to indicate that I will accept
20    service, if there is any long-term protective restraining order
21    on her behalf.
22             THE COURT:  All right.  Thank you.
23             MS. WEIDNER-TAFS:  And that's all.
24             THE COURT:  As far as the temporary restraining order
25    ordering her not to have any contact with minor victim
```

1   identified as J.S., do you have any objection to her being

2   subject to that?

3           MS. WEIDNER-TAFS:  There's no objection without -- we

4   don't concede that there's grounds for it, but she doesn't have

5   a problem not contacting J.S. or her family --

6           THE COURT:  Understood.

7           MS. WEIDNER-TAFS:  -- in the interim until there's a

8   long-term order.

9           THE COURT:  Understood.  All right.  Thank you,

10  Ms. Weidner-Tafs.

11          And, ma'am, if you don't mind, what I'll do is have

12  your client just identify herself for the record and then I'll

13  make that order.

14          MS. WEIDNER-TAFS:  Okay.

15          THE COURT:  Ma'am, Ms. Carter, if you could just step

16  to the microphone.  And go ahead and state your full name for

17  the record, please.

18          THE WITNESS:  Julissa Marie Carter.

19          THE COURT:  Okay.  So, ma'am, I'm going to order you

20  not to have any contact with a minor victim identified by the

21  initials J, like Juliette, letter S, like Sierra.  Do you know

22  who that person is?

23          THE WITNESS:  Yes, sir.

24          THE COURT:  Okay.  You may not have any contact with

25  her, and that's either direct or indirect contact.  Direct

1    contact would be talking to somebody face-to-face or maybe

2    calling them on the phone.  Indirect contact might mean posting

3    something on their Facebook page or having a third-party

4    contact them on your behalf.  None of those things are

5    acceptable.  Okay?

6              THE WITNESS:  Okay.

7              THE COURT:  So even if by some chance, I'm not saying

8    this would be happen, but hypothetically, if she were to call

9    you, you need to hang up.  No contact means no contact.  Do you

10   understand?

11             THE WITNESS:  Yes, sir.

12             THE COURT:  Okay.  That's a -- that is a temporary

13   restraining order that will be in effect until the 21st of this

14   month.  And we'll take up the question of whether or not that

15   will become a permanent restraining order.  If it does become a

16   permanent restraining order, your attorney will notify you of

17   that.  Okay?

18             THE WITNESS:  Okay.

19             THE COURT:  Do you have any questions?

20             THE WITNESS:  No, sir.

21             THE COURT:  All right.  Thank you very much.  You can

22   go ahead and be seated.

23             MS. IVERS:  And, Judge, does that also apply to -- the

24   allegations are that Ms. Carter was also contacting J.S.'s

25   mother trying to reach J.S.  Can we also make that

1    (indiscernible.)

2              THE COURT:  Sure.  I understood your request just to

3    apply to J.S.

4              Ms. Carter, do you know who J.S.'s mother is?  Go

5    ahead and step up to the microphone, ma'am.

6              MS. WEIDNER-TAFS:  Just whether you know who she is.

7              THE COURT:  Yeah.  Just yes or no.

8              THE WITNESS:  No, sir.

9              THE COURT:  Okay.  You also may not have any contact

10   with J.S.'s mother, and it's the same thing I just explained,

11   neither direct or indirect, do you understand?

12             THE WITNESS:  Okay.

13             THE COURT:  Okay.  All right.  Anything else on this

14   from the government, Ms. Ivers?

15             MS. IVERS:  No.

16             THE COURT:  All right.  Thank you, Ms. Carter.  Thank

17   you, Ms. Ivers.

18             Okay --

19             MR. WENDT:  Your Honor, could I bring up an issue with

20   my client's temporary restraining order?

21             THE COURT:  Sure.

22             MR. WENDT:  Is this the appropriate time to do so?

23             THE COURT:  I don't know.  Hang on just one second.

24   Anything else from the government on the temporary restraining

25   order issue?

1          MS. IVERS:  No, Your Honor.

2          THE COURT:  All right.  Thank you.

3          Go ahead, Mr. Wendt.

4          MR. WENDT:  Respectfully, Your Honor, we object to the

5    extension of the temporary restraining order.

6          THE COURT:  Okay.

7          MR. WENDT:  When I read the status report issued by

8    the government, the sole reason for extending the temporary

9    restraining order against my client was the difficulty with

10   getting Ms. Carter in, getting her represented and getting her

11   here to testify.

12         As I stated at the last hearing and I've stated to

13   opposing counsel and anyone who would listen many times,

14   there's no way that this person was going to testify.  No

15   attorney would allow or would do anything they could to keep

16   their client from testifying, given the -- given the

17   allegations.  I'm looking at Docket 246, specifically in

18   paragraphs 14 and 15, and there may be others here as well,

19   against this person.

20         I would suggest that the reason given to the Court for

21   extending my client's temporary restraining order was

22   unsubstantial, let's just say.  I don't want to be rude.  But

23   they always knew that she's not going to testify and they just

24   used her as an excuse to extend the temporary restraining

25   order.  So I would ask the Court to lift the temporary

1   restraining order at this time completely.

2          THE COURT:  Okay.  All right.  Your objection is

3   noted.  I would respectfully disagree.  Based on the record

4   before this Court, it seems as though the Court to me -- not

5   the Court -- the government has shown diligence in preparing

6   for this hearing.  They're endeavoring to provide discovery to

7   the defense.  They have their two witnesses here ready to

8   testify.  I don't have any reason to think that their

9   representations about Ms. Carter were made in bad faith as

10  you're suggesting.

11         In order for me to find good cause I have to find that

12  the government has been diligent and not negligent and I think

13  the record amply supports that they have been diligent in their

14  representations.  I appreciate you advocating on behalf of your

15  client and your objection is noted, but my order continuing the

16  temporary restraining order to the 21st of July stands, and

17  we'll take up that issue again on the 21st of July.

18         MR. WENDT:  And if we could retouch the phone calls

19  again.  I just want to make it clear.  I hope there's no

20  misunderstanding.  We have asked for my client's phone calls

21  from the date of trial to present.  All the phone calls.  Not

22  just the phone calls that were listed in the affidavit.

23         And the reason for that is these phone calls in the

24  affidavit, the rule of completeness would require us to look at

25  them in reference to all the other phone calls my client may

1   have had with these individuals in the affidavit.  So we have
2   asked for all the phone calls.  It should not be a difficult
3   thing to do to just copy the phone calls from the last day of
4   trial, which was probably a couple months ago now up to present
5   and just give them to me.  So I just want that known.  We're
6   not looking for just two or three phone calls.  We're looking
7   for all the phone calls.
8           THE COURT:  All right.  I take your point.
9           Ms. Ivers, are you aware, is the plan to turn over all
10  the phone calls from the date of trial to present, or what's
11  the government's plan on this?
12          MS. IVERS:  Law enforcement has not reviewed every
13  single phone call that Mr. Grant has made from the day of trial
14  to present.  They pulled a two-week section to determine if
15  Mr. Grant was trying to contact J.S., and that's reflected in
16  the FBI 302 that was produced to defense counsel.  I don't see
17  any reason why we should give him --
18          I mean, Mr. Grant knows who he has been calling and
19  what he has been calling about.  I don't think we need to
20  provide him copies of every single call he's made.  That seems
21  well outside the scope of this hearing and I don't know of any
22  other basis to provide those, other than for purposes of this
23  hearing.
24          THE COURT:  Well, I think Mr. Wendt's argument is, and
25  Mr. Wendt, correct me if I'm wrong, but that all the calls are

1   needed to put everything in context.  And without the context

2   of another phone call one phone call might give the wrong

3   impression of what was -- he was trying to communicate, or

4   something like that?

5           MR. WENDT:  It's not only context and completeness.

6   It's potential *Brady* material, Your Honor.

7           MS. IVERS:  *Brady* with respect to what?  Our *Brady*

8   obligations are over, the trial happened.

9           MR. WENDT:  Well, no, that's not true.  *Brady*

10  obligation continues until sentencing.

11          MS. IVERS:  Okay.  So what *Brady* -- I mean -- this --

12          THE COURT:  So, I assume these calls were all on the

13  Securus system?

14          MS. IVERS:  FBI hasn't pulled every single call that

15  Mr. Grant has made.  I think that's well outside the scope of

16  our obligation to produce every single call that Mr. Grant has

17  made since April.

18          THE COURT:  All right.  Is it your plan to produce

19  every call that the FBI has?

20          MS. IVERS:  Yes.

21          THE COURT:  Okay.

22          MS. IVERS:  They pulled a two-week period to review.

23  They don't review every single call that Mr. Grant makes.  I

24  mean, there's so many.

25          THE COURT:  Sure.  Well, I -- I can see going about

1    this two ways.  Since the calls -- all of the calls presumably

2    are still on this Securus system unless they've just been aged

3    out and have been purged from the system, as Securus will do --

4    hear me out -- and then perhaps the shortest route to resolving

5    this would be just to have those calls dumped by Securus and

6    provide Mr. Wendt with everything.  Just throwing that out

7    there.

8            In the alternative, Mr. Wendt, once you get the calls

9    that the government is planning to turn over with this two-week

10   sample, get them on Thursday.  If that satisfies your discovery

11   needs then, then we're done.  If it doesn't, please meet and

12   confer with the government to specify what it is you need and

13   why.  And if they are not inclined to turn that over, I know

14   you know how to make the appropriate discovery motion to the

15   Court.

16           MR. WENDT:  Thank you, Judge.

17           THE COURT:  All right.

18           MR. WENDT:  And are we going to -- my client is

19   raising his hand, but are we going to go and discuss the

20   circumstances under which he's being held now?

21           THE COURT:  We are.

22           MR. WENDT:  Okay.  We need to talk about that.

23           THE COURT:  Okay.  All right.  Mr. Grant, is there

24   something you want to tell me?

25           THE DEFENDANT:  Yeah.  She just said that I know what

1   phone calls I made and what conversations I had.  First, this
2   is an evidentiary hearing, right, for evidence, right?
3           THE COURT:  We're not taking evidence right now.
4           THE DEFENDANT:  Well, that's why -- I don't want every
5   phone call that I ever made.  I only made a few phone calls to
6   these two individuals.
7           THE COURT:  All right.  Mr. Grant, you might want to
8   talk to your lawyer before you --
9           THE DEFENDANT:  I know what I'm saying, and I'm asking
10  for those specific phone calls.  They're talking about a
11  two-week period that they picked a few phone calls out of.  The
12  specific phone calls that I'm asking for is showing whatever it
13  is I'm saying I did or didn't do.  So I'm asking specifically
14  for those, there's not no -- everybody's trying to make it into
15  a difficult situation.  It's not.  It's not that hard.  If they
16  can use my phone calls against me, why can't I use my phone
17  calls for me?
18          THE COURT:  Well, there is a rule of evidence that is
19  directly on point as far as that goes.
20          But if there is something specific that you want the
21  best thing to do is tell your lawyer and it's much, much
22  easier -- if your lawyer can go to the government with the
23  specific request, like we want the call from this date, that's
24  much, much easier than just asking for everything.  So talk to
25  your lawyer, let him know what the dates are, he'll ask the

1    government and we can maybe sort this out.

2          THE DEFENDANT:  I've been saying this.  I said this on

3    the 24th when we came in, I've been given -- and I already

4    knew -- and I just I believe -- I don't know if you got the

5    letter yet, but I believe I wrote you a letter and let you

6    know.  I already knew this was going -- this is not -- no

7    secret.  I knew this was going to happen.  They don't -- of

8    course, they're going to play these type of games.

9          They know which -- this man listen to phone calls --

10    all my phone calls.  This is not no secret.  But we're not here

11    for that.  But I know for a fact, they don't want to give up

12    those specific phone calls, because they know what's on phone

13    calls.

14          And I -- and you know -- I done gave my lawyer this

15    before.  I had plenty of copies of every number -- the number

16    that I specifically wanted, date, time and it's not -- it's not

17    hard.

18          THE COURT:  All right.  Mr. Wendt, you have

19    Mr. Grant's specific requests for the particular calls he

20    wants?

21          MR. WENDT:  I believe I do.

22          THE COURT:  Okay.

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  All right.

25          THE DEFENDANT:  Just in case, to make it easier for

1  them, that makes it even easier.

2          MR. WENDT:  All right.

3          THE COURT:  So, Mr. Wendt, you can make a tailored

4  request to the government for the specific calls and we can

5  move forward on this issue.

6          MR. WENDT:  I will.

7          THE COURT:  Okay.  All right.  Very good.

8          All right.  Regarding Mr. Grant's conditions of

9  confinement, you wanted to talk to me about that?

10         MR. WENDT:  Yes, Judge.  The one -- first and

11  foremost, the man needs to take a shower.

12         THE DEFENDANT:  Yes.

13         THE COURT:  All right.  He's still being denied access

14  to the shower?

15         MR. WENDT:  He was able to get one shower because

16  there was a new CO.

17         THE COURT:  Right, I saw that, and that was the last

18  time --

19         MR. WENDT:  That's the only time and the only shower

20  he's had.

21         THE COURT:  Okay.  All right.  What else?

22         MR. WENDT:  He had like -- I mean, we're talking about

23  phone calls here, when I get the phone calls I'd like perhaps

24  to give them to him and he can listen to them.  In other words,

25  he'd like to be able to go through discovery.  He'd like to be

```
 1    able to go to the law library.  He'd like to be able to speak
 2    to his family members.  I've spoken with his aunt, who I'm sure
 3    I could get her to testify and she's more than willing to do
 4    so.  She's in Virginia; is that right?
 5              THE DEFENDANT:  Yes, sir.
 6              MR. WENDT:  So he would like to have the phone
 7    loosened up.  Isn't it enough to just give an order that he
 8    can't contact J. --
 9              THE DEFENDANT:  -- my mail.
10              MR. WENDT:  Yes, he's not getting mail either.  My
11    understanding is the mail was to be reviewed.
12              THE DEFENDANT:  Not restricted.
13              THE COURT:  Not restricted.  It was to be reviewed,
14    any ingoing or outgoing mail.  I think that's in the order.
15    They're interpreting that, and I got their -- Department of
16    Corrections saying no mail, you know.
17              THE DEFENDANT:  Confiscates all my mail.  Legal
18    mail --
19              MR. WENDT:  All right.  We got that.
20              So they can still go through his mail and read it if
21    they want to, you know, scan through it and whatever they want
22    to, but he should be able to send out letters, even though
23    they're going to be reviewed.  He should be able to receive
24    letters, even though they're going to be reviewed.
25              He should be able to speak to his family.  He -- I
```

1  know the Court has voiced a concern that he could borrow

2  somebody else's number, identification number and make a phone

3  call.  I would ask that the Court simply order that no contact

4  with J.S. or J.S.'s mother, and no contact with people who are

5  directed or suggested to contact those people in any way is

6  sufficient.  He'd be -- he'd be crazy to do that and yet

7  there's a slight chance he could borrow somebody else's number

8  and do that.  But I don't think that's a reasonable --

9          THE COURT:  Sir, I'm literally, for the record, I'm

10  holding aloft a letter that I received from Mr. Grant.  In the

11  first three sentences of that letter he tells me that he's

12  sending this under another inmate's identifying --

13          THE DEFENDANT:  I had no choice.

14          MR. WENDT:  Apparently, he had absolutely no choice.

15          THE DEFENDANT:  They are not legal (indiscernible.)

16          THE COURT:  -- unless someone put a gun to his head

17  and told him to write that letter, he had a choice.  And the

18  way he exercised that choice tells the Court that he cannot be

19  trusted not to do the same thing with phone calls -- with phone

20  calls or letter writing.

21          I don't want to see this man's conditions be any

22  stricter than they need to be to ensure the safety of everybody

23  else in the community, particularly J.S. and her family, but

24  I'm not the one driving this train, Mr. Grant is.

25          So -- but I do want to address the shower issue.  I'm

1   going to order that Mr. Grant get -- what's the standard for

2   inmate showers, is it twice a week, three times a week?

3           MR. WENDT:  I think it's three times a week.

4           THE DEFENDANT:  No -- what?  Who washes their tail

5   three time --

6           MR. WENDT:  Instead of arguing, is there a standard

7   that you're aware of?

8           THE DEFENDANT:  Well, I'm in the hole, so every other

9   day.

10          THE COURT:  All right.  I'm going to order that he

11  gets a shower no less than three times a week.  All right.

12          THE DEFENDANT:  What about law library?

13          THE COURT:  So the -- I think the issue with the law

14  library is access to computers when he's there, which makes it

15  difficult to regulate who he communicates with.

16          THE DEFENDANT:  You can't communicate with nobody.

17          MR. WENDT:  I don't think they can send out emails.

18          THE DEFENDANT:  They only can get Nexis and view the

19  discovery.

20          THE COURT:  Specifically with regard to the protective

21  order, does the government have a position on Mr. Grant's

22  access to the law library?

23          MS. IVERS:  I don't know what he can and can't do in

24  the law library.  I'm just not familiar enough.

25          THE COURT:  Okay.

```
 1              MS. IVERS:  Your Honor probably knows better than I

 2    do.

 3              THE COURT:  A lot's changed since I was regularly

 4    going to the jail.

 5              Let me do this, I'm going to -- I'm going to ask the

 6    marshals to check in with the jail and report back to me.  As

 7    long as there's no way for him to send messages or emails or

 8    anything out, I not only have no problem ordering that he has

 9    access to the law library, it's important.  It's his right to

10    have access to the law library.  If it will in any way

11    compromise the restriction on his communications with the

12    outside world then the restriction will stand.  But I'll have

13    the marshals check in with the jail.  And, Deputy, if you could

14    follow up with me and I will just craft the order

15    appropriately.

16              All right.  So showering, law library --

17              THE DEFENDANT:  Can I at least receive mail?

18              THE COURT:  So legal mail Mr. Grant should be getting.

19              THE DEFENDANT:  They're not give me nothing.

20              THE COURT:  All right.  So I need to ensure that he's

21    receiving his legal mail.

22              THE DEFENDANT:  So my family just sent me some money

23    from out of state and if I can't get mail then the money just

24    sits there, and then if it sits there for a while, that's a bad

25    check or money order.
```

1          THE COURT:  Sure.  It will expire.

2          THE DEFENDANT:  And that was in 6/25/21.  I don't know

3    why I can't just receive the mail.  I can understand sending

4    it, but receiving it.

5          THE COURT:  I am inclined to agree.

6          Ms. Ivers, is there any reason that Mr. Grant

7    shouldn't be able to receive mail, particularly -- I mean, from

8    anybody from the outside that wants to contact him?

9          MS. IVERS:  No, Your Honor.

10          THE COURT:  Okay.  So I'll also make the order that

11    you can receive mail without any restrictions from the Court.

12    The jail obviously is going to have its own restrictions, but

13    I'm not going to limit mail that's coming in to you.  Okay?

14          THE DEFENDANT:  Okay.

15          THE COURT:  All right.  Go ahead.

16          THE DEFENDANT:  Just one more thing.

17          THE COURT:  Yeah.

18          THE DEFENDANT:  I'm trying to -- I mean, I know you

19    all got to have these court dates and hearings and all this

20    other stuff, but these are allegations.  They're not -- these

21    are not facts and this just, me personally, I feel like I'm

22    being punished for something I haven't even been proven if I

23    did or didn't do, because this is a form -- being inside -- in

24    the (indiscernible) in the hole by yourself, can't communicate

25    with the outside world, and still trying to prepare myself for

1    a sentencing, and I can't -- I can't look at anything.  I can't

2    get any -- I don't -- and then asking for a continuance.  Well,

3    I have to ask for a continuance, because I'm not getting what I

4    need for the Court date that I want.  I want to be able to

5    present to say, listen, this is what -- I didn't do this.  This

6    is the evidence right here.  I don't -- I don't understand this

7    and that.  It's just -- is it right?

8              THE COURT:  I appreciate that you're in a bad

9    situation, sir.  I really do.  And as I said a few minutes ago,

10   I don't want to see your conditions of confinement be any

11   stricter than they have to be.  And there is a reason right now

12   that the restraining order is a temporary restraining order.

13   There is some indication before the Court that indicates that

14   perhaps -- well, that definitely, your communication with

15   certain individuals should be restricted temporarily.  Okay.

16   But nothing is set in stone here.  And we're going to have an

17   evidentiary hearing to establish whether or not that should or

18   shouldn't be a permanent order.  And I promise you, I've not

19   made up my mind on that.

20             THE DEFENDANT:  I know.  Just a prime example, now

21   what if I show the Court that -- that what they is presenting

22   is a bunch -- was --

23             THE COURT:  Was wrong?

24             THE DEFENDANT:  What do I get from that?  I done went

25   through the punishment already.

1          THE COURT:  I appreciate that, sir.  It's no different

2   than if you sit in jail for a year waiting for a jail and the

3   jury finds you not guilty.  There's no way to give you that

4   year back, and for that I'm truly sorry.

5          THE DEFENDANT:  I understand.

6          THE COURT:  We don't have a perfect system.  Okay.  I

7   mean it when I say it, my mind is not made up on a permanent

8   restraining order.  If you show me that everything is wrong --

9          THE DEFENDANT:  I most definitely can show you that.

10          THE COURT:  We'll wait and see on that.  If you and

11  your lawyer show me that this temporary restraining order

12  should not be a permanent one, I will not hesitate to order

13  that it be lifted.  Okay.

14          All right.  I think -- I'll get that order drafted and

15  get it out to get Mr. Grant a shower, access to law library,

16  and at least get him receiving incoming mail.  I think that

17  covers it.

18          Oh, I was handed a note that we need to change the

19  hearing time that I said earlier.  It's still going to be on

20  the 21st, but it will be 11:00 a.m. to 1:00 p.m.  Does that

21  still work for everybody?

22          MS. DOYLE:  Yes, Your Honor.

23          MR. WENDT:  It would.  And if I may, my understanding

24  is the marshals are going to check on the ability to

25  communicate via computer from the law library?

```
 1              THE COURT:  We're going to make sure that Mr. Grant
 2    getting access to the law library won't compromise his
 3    restrictions on his communication.
 4              MR. WENDT:  And if possible to do so, the Court will
 5    order that he has access?
 6              THE COURT:  Exactly right.
 7              THE DEFENDANT:  And everything else you said.
 8              THE COURT:  And everything else I said.
 9              THE DEFENDANT:  Okay.  I just got to make sure.
10    Because last time I told them to go back and tell them I did --
11    they did, but the jail they only listen to Court orders.
12              THE COURT:  I will issue an order.  I will issue an
13    order.
14              THE DEFENDANT:  Yeah.
15              THE COURT:  Okay.  All right.  Anything else from the
16    government?
17              MS. IVERS:  No, Your Honor.
18              THE COURT:  All right.  Anything else from the
19    defense?
20              MR. WENDT:  Not today.
21              THE COURT:  Okay.  Mr. Grant, any questions, comments,
22    or concerns?
23              THE DEFENDANT:  Naw, that was it.
24              THE COURT:  All right.  Thank you all very much for
25    your hard work on this.
```

1          We are in recess.

2          DEPUTY CLERK:  All rise.  This matter is adjourned.

3     This Court now stands in recess until 2:00 p.m.

4          (Whereupon, the Court adjourned at 12:46 p.m.)

5                         --oo0oo--

6                        CERTIFICATE

7         I, Stacy M. Baldwin, Federal Official Court Reporter in and
      for the United States District Court of the District of Alaska,
8     do hereby certify that the foregoing transcript is a true and
      accurate transcript from the digital recording in the
9     above-entitled matter and that the transcript page format is in
      conformance with the regulations of the Judicial Conference of
10    the United States.

11        Dated January 31, 2023.

12

13                              /s/ Stacy M. Baldwin
                                STACY M. BALDWIN, RCR, RMR
14                              FEDERAL OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25