```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF ALASKA


UNITED STATES OF AMERICA,  )
                           )
          Plaintiff,       )
                           )
     vs.                   )
                           ) CASE NO. 3:19-cr-00003-RRB-MMS
TRISTAN GRANT,             )
                           )
          Defendant.       )
_____ )


 TRANSCRIPT OF CONTINUED HEARING ON MOTION FOR RESTRAINING ORDER
       THE HONORABLE MATTHEW M. SCOBLE, U.S. MAGISTRATE JUDGE
                     Thursday - July 21, 2021
                     10:03 a.m. - 10:19 a.m.
                        Anchorage, Alaska
```

**FOR THE GOVERNMENT:**
    Office of the United States Attorney
    BY: KAYLA HAYES DOYLE
    222 West 7th Avenue, RM 253, #9
    Anchorage, Alaska 99513
    907-250-7710

**FOR THE DEFENDANT:**
    Law Offices of James Alan Wendt
    BY: JAMES A. WENDT
    425 G Street, Suite 610
    Anchorage, Alaska 99501
    907-258-9100

Clerk in Attendance: Holly Rhoden

---

**STACY M. BALDWIN**
**Realtime Certified Reporter**
**Federal Official Court Reporter**
222 West 7th Avenue, #4
Anchorage, Alaska 99513
Transcript Produced from the Digital Recording

1      (Call to Order of the Court at 10:03 a.m.)
2      DEPUTY CLERK:  All rise.  His Honor, the Court, the
3  United States District Court for the District of Alaska is now
4  in session, the Honorable Matthew M. Scoble presiding.
5      Please be seated.  Your Honor, we're on record in Case
6  No. 3:19-cr-00003-RRB-MMS, the *United States of America versus
7  Tristan Grant.*  Counsel, please identify yourselves for the
8  record.
9      MS. DOYLE:  Kayla Doyle for the United States.
10      MR. WENDT:  James Wendt for Mr. Grant.
11      THE COURT:  All right.  Good morning, Ms. Doyle.  Good
12  morning, Mr. Wendt.  Good morning to you, Mr. Grant.  Mr. Grant
13  is present before the Court.  He's in custody.
14      All right.  We're on today for a hearing on a
15  long-term no contact order.  Is the government ready to
16  proceed?
17      MS. DOYLE:  We are, Your Honor.  Defense counsel did
18  let me know before this hearing started that they may want a
19  continuance.
20      THE COURT:  All right.  Mr. Wendt, where we at?
21      MR. WENDT:  Your Honor, honestly, we're not anywhere
22  near fully prepared to proceed.
23      THE COURT:  Okay.
24      MR. WENDT:  I did get discovery from the government.
25  I was able to pick it up at 4:45 p.m. on this past Friday.  I

1     think they made it available a couple hours before that, but I
2     was over there with an interview with a client in another case.
3     And when it was done, I got it.  So I got it the last thing on
4     Friday.
5              THE COURT:  Okay.
6              MR. WENDT:  The discovery I have, I have not been able
7     to go through.  I have received a number of telephone calls,
8     and by my count it's 27, ranging in time.  But generally
9     speaking, most of them are pretty long, quite frankly, from
10    what I can tell.  My problem with the phone calls, Judge, is in
11    the past when I've received discovery logs from the government
12    with phone calls, the phone calls are identified by the time
13    and the date of the call and the number that was dialed out.
14    I've not received any of that.  All I have is a list of 27
15    phone calls and there's no indication of when they were made or
16    who they were made to.
17             THE COURT:  So what data do you have on this list?
18             MR. WENDT:  There are a number of -- there's numbers
19    there that I don't understand.  There's Bates numbers, there's
20    two columns of Bates numbers.
21             There's one Bates number for each one.  So when I say
22    two columns, each column is the same for the phone calls.  So
23    there's a Bates number for the phone calls.  And then there is
24    something called a file name.  The file name does not appear to
25    me to reference any date or time.  It just appears to be a

number of numbers and letters strung together.  Just name of
                 the file.  And then there is a column for the page count.  It's
                 a one-page per each.  And then there is something called
                 evidence type.  But the evidence type just says Tristan Grant
                 jail calls, 4/20/21 to 5/17/21, which is --
                         Basically, we're getting the phone calls, I assume,
                 all the phone calls made in that area.  But it doesn't tell
                 me -- the problem is I've got three or four phone calls I'd
                 really like to have the time to listen to that my client
                 indicates could be helpful given the allegations against him.
                 And I have not had a chance to listen to them.
                         THE COURT:  So -- and you have been provided with the
                 audio of those calls?
                         MR. WENDT:  It does appear -- yes.
                         THE COURT:  Okay.
                         MR. WENDT:  I'm sure we have.  And I have actually
                 started to listen to them.  The first three calls I've listened
                 to are relatively innocuous.  So I -- you know.
                         THE COURT:  Okay.
                         MR. WENDT:  That's where we are there.
                         THE COURT:  All right.  Let me check in with the
                 government on that issue.  Ms. Doyle, if you know, the log that
                 Mr. Wendt is referring to, is that something that your office
                 prepared as part of the discovery process or is that how
                 Securus provided the information?

5

 1            MS. DOYLE:  Your Honor, I believe that's -- I'm
 2   actually not sure.  I do know that when there're file names,
 3   like Mr. Wendt was referencing with actual dates and times,
 4   that's something our office prepares.  I would have to check
 5   in, but I think it's quite possible that given we were trying
 6   to expedite this, that that process didn't happen here.  And
 7   that's why there are the dates and times and the file names
 8   like there would normally be.  I don't have notes to that
 9   effect, but that would be my guess.
10            THE COURT:  Okay. All right.  Well, it seems -- I
11   certainly understand what he's getting at, that without the
12   dates and times to put everything in context, it's not terribly
13   useful.  And I would imagine that when Securus provides the
14   information there's some at least metadata or something that
15   indicates when the phone calls were made.  So I'm sure that
16   would facilitate his preparation process a lot if that could be
17   provided to him.
18            MS. DOYLE:  Yes.  I can get in touch and see what the
19   best way to get the dates and times matched up with the files
20   are.
21            THE COURT:  Okay.  Fortunately we're not dealing with
22   a mountain of calls.  27 calls, I know it's substantial, it's
23   not insurmountable.
24            MR. WENDT:  Correct.
25            THE COURT:  All right.  Anything else, Mr. Wendt?

```
 1              MR. WENDT:  If I could change the subject briefly, but
 2     it's important, Judge.
 3              THE COURT:  Before we change the subject, let me
 4     just -- let's just close this loop.
 5              So, Ms. Doyle, it sounds like Mr. Wendt is moving to
 6     continue today's hearing on the proposed long-term no contact
 7     order.  What's the government's position?
 8              MS. DOYLE:  Your Honor, we're not opposed to a
 9     continuance for today.  So long as the temporary restraining
10     order remains in effect.
11              THE COURT:  Sure.
12              All right.  Mr. Wendt, how long of a continuance are
13     you looking for?
14              MR. WENDT:  I would like a couple weeks, Your Honor,
15     simply because it's absolutely imperative that we get J.S. and
16     J.S.'s mother in here.
17              THE COURT:  Okay.
18              MR. WENDT:  This is based on what they say.
19              THE COURT:  Okay.
20              MR. WENDT:  What they allegedly said to someone.  And
21     I think it's fair that they come and just say what the problem
22     is.
23              THE COURT:  Well, have you subpoenaed them?
24              MR. WENDT:  I haven't.  And I will do that this week.
25     I will send an order to this Court asking for a subpoena.
```

1          THE COURT:  All right.
2          MR. WENDT:  I'm not sure where they are.  Maybe the
3   government will have to tell me where they are, but I will do
4   that.
5          THE COURT:  Okay.  All right.  So if you want to come
6   back in a couple of weeks that would be the week of the 2nd.
7          Thank you, Holly.
8          Let's see, I can offer you August 6th at 10:00 a.m.
9          MR. WENDT:  Sorry, Judge.
10         MS. DOYLE:  Your Honor, I am not available at that
11  time.  I could see if Ms. Ivers would be able to cover that.
12  We are sort of jointly handling this.
13         THE COURT:  Sure.  Mr. Wendt, how is that date and
14  time for you?
15         MR. WENDT:  It looks fine.  Just so the Court knows,
16  we have Ms. Eloisa (phonetic) on for an evidentiary hearing at
17  9:00 a.m.
18         THE COURT:  Right.
19         MR. WENDT:  I don't think that's going to take place.
20  I think we're going to settle that issue, or maybe ask --
21  because it's a petition to revoke supervised release, they may
22  want a little more time.  The government may want more time.
23  So we may be putting that off.  I think it's extremely
24  unlikely, in other words, that that will go at 9:00 a.m. on
25  Friday.

1       THE COURT: Okay. Well, thank you.
2       What I would be inclined to do then is go ahead and
3  set it for the 6th at 10:00 a.m.
4       And, Ms. Doyle, if you could get with Ms. Ivers and if
5  she can cover that hearing then we're good to go. If she
6  can't, I would be certainly favorably inclined to just
7  reschedule it to accommodate the government.
8       MS. DOYLE: Thank you, Your Honor.
9       THE COURT: All right. So we'll say August 6th at
10 10:00 a.m. And the temporary restraining order will remain in
11 effect until that date and time, when we will take the issue up
12 further.
13      All right. On the subject of continuing today's
14 evidentiary hearing, anything else, Mr. Wendt?
15      MR. WENDT: Not on that subject.
16      THE COURT: Anything else, Ms. Doyle?
17      MS. DOYLE: No, Your Honor.
18      THE COURT: All right. Mr. Wendt, you had something
19 else you wanted to bring up?
20      MR. WENDT: Okay. About the temporary restraining
21 order, the Court issued a new order -- and I'm sorry I didn't
22 bring it with me -- but after our last hearing the Court issued
23 a new order.
24      THE COURT: Uh-huh.
25      MR. WENDT: I have conferred with my client on a

1    couple of occasions and he indicated to me that no changes were
2    made as a result of the order and he had asked about it and he
3    was told that the order -- that no other order was received.
4              So, I phoned the jail and eventually I spoke to
5    records.  It took me a while to figure out who to even speak
6    to, to get people to answer the phone.  But I got through to
7    records and spoke to a very nice man there, who was very
8    helpful, who interrupted me after my first six words and said,
9    no, no, I know what your problem is.  The problem is, he said
10   to me, is that the Court don't send the orders over, the
11   federal courts don't, the state courts do.  The federal orders
12   are delivered by the marshals.
13             THE COURT:  Okay.
14             MR. WENDT:  And he said let me check to see what we've
15   got.  He checked and he said, no, the last order we received, I
16   think he said it was June --
17             THE DEFENDANT:  23rd.
18             MR. WENDT:  Well, it was a June 23rd order, he said I
19   got it on June 24th or 25th, something like that, and that was
20   delivered by Marshal Jimmy Johnson.  And we've received nothing
21   since then.  And this was last Friday, I believe, I had this
22   discussion.
23             So I called Marshal Jimmy Johnson and didn't get
24   through to him and left a message.  And he has not gotten back
25   to me.  But as far as I'm aware, at least as of the end of the

10

1  day Friday, that order had never been delivered to the jail.
2       THE COURT:  All right.
3       MR. WENDT:  And I'm trying to get through to Marshal
4  Johnson.  Is there a marshal --
5       MARSHAL:  He's on vacation.
6       MR. WENDT:  He's on vacation.
7       Okay.  Who do I talk to in his place?
8       THE COURT:  Well, Mr. Wendt, I don't know where the
9  disconnect is.  I know that my chambers took steps to ensure
10 that the order was transmitted to the jail.  For one reason or
11 another, apparently it wasn't.  But we'll close the loop and
12 make sure that happens.
13      MR. WENDT:  Okay. If you would.  Thank you, Judge.
14      THE COURT:  Absolutely.  No, of course.  I'm sorry
15 that hasn't happened yet, but we'll stay on top of it.
16      MR. WENDT:  Thank you very much.
17      THE COURT:  Yes, of course.
18      All right.  Is there anything else that we can take up
19 today?  I think your client has something.  It's up to you.
20      MR. WENDT:  Go ahead.
21      THE COURT:  All right. Mr. Grant.
22      THE DEFENDANT:  Yeah.  You know, hearing everybody
23 talk about these phone calls again, and they gave me phone
24 calls, that I -- that you were saying -- I don't know how it
25 can help you all, but like I've said before, Securus -- when

1  they ask Securus for the phone calls, they have a whole list
2  every day that -- and the numbers and everything that I made.
3  And I gave, once again, my attorney three or four times this
4  list. Right now he just now got the phone calls. So it's not
5  his fault. But he -- to go through that situation like that to
6  try to find any of these numbers, you know, I need -- I need it
7  like this. Because me saying, oh, this is the specific phone
8  call -- I need all the phone calls that I'm asking for. But me
9  saying this specific phone call, I need it this date and time,
10 I already had it written down and everything for -- so there
11 would be no difficult process for him to have to go through and
12 then for me to have to go through. And --
13         Well, now he's just basically told you about how I
14 still haven't been able to do anything. So, if you can -- if
15 ya'll can please, because they don't listen to you, like I told
16 you before, anything that I say, no, we don't got no order.
17 And all I want to do is review my discovery to help my
18 attorney. And so the next time I come in this courtroom I
19 don't have to continue this, because I'm the one who have to
20 still sit back there in the hole and just not be in
21 communication with nobody and everything when this could all
22 already been taken care of, how it was supposed to have been
23 taken care of the first few times.
24         And I know my attorney probably not going to bring it
25 up right now, but I'm going to bring it up anyway. The

1  other -- he said he's going to put in a motion or whatever, but
2  I'm still going to put it in court on the record, the other
3  situation was me asking for all the phone calls that I've been
4  asking for, they told my attorney that it's protected material
5  when they have been screening -- their phone calls.  You
6  already said that I could get my phone calls.  So I don't see
7  what the protected material situation is for.
8              And let's just say, if he get -- if he looked through
9  these phones calls that they gave him right now and it's not
10 all the phone calls that I'm asking for.  And they say, oh,
11 well, those phone calls are protected material.  I think like
12 those are games that's being played.  Just let me get all my
13 phone calls.  It shouldn't be protected materials.  It's my
14 phone calls.  It's me making the phone call from the jail.  If
15 you can use one phone call, what's the difference is -- I don't
16 even know what protected material is, honestly.
17             THE COURT:  Okay.  I'm not in a position to sort that
18 out right now.  If there is discovery that you're not getting,
19 your lawyer knows exactly how to make the appropriate motion.
20 And if there are things that should be getting turned over that
21 aren't, then I'm more than happy to make that order that they
22 be turned over.
23             THE DEFENDANT:  I'm just asking, because like I said,
24 I don't want to have to come back in here again and be like,
25 oh, I didn't get this.  And I got to go through this process

```
 1  again.
 2          THE COURT:  So what I've heard the government say just
 3  a few minutes ago is they're going to work on getting the
 4  list -- basically what you described, the list from Securus
 5  that sets out the date and time of the call.  I understand
 6  that -- they understand that and they're going to work on
 7  getting that to your lawyer.  I think that will resolve the
 8  question about the phone calls.
 9          THE DEFENDANT:  Can my attorney -- like I said, can my
10  attorney give them a list too, to specifically, hey, can you
11  all make sure you have these calls in there.
12          THE COURT:  He can give them anything he wants.
13          THE DEFENDANT:  All right.
14          THE COURT:  You know, as far as how that gets worked
15  out that's between them.
16          THE DEFENDANT:  Okay.
17          THE COURT:  And I'm in a position to resolve that one
18  way or another.  But if that would facilitate the process, of
19  course your attorney can do that.
20          THE DEFENDANT:  All right.  I'm just asking.
21          THE COURT:  There's nothing wrong with asking
22  questions.
23          THE DEFENDANT:  Okay.  All right.
24          THE COURT:  All right.  Mr. Grant, anything else?
25          THE DEFENDANT:  Naw, that's it.
```

```
 1              THE COURT:  And I'm sorry about the breakdown of
 2   communication on the Court's order regarding your access to
 3   showers and the law library, and I'll make sure that gets taken
 4   care of.
 5              THE DEFENDANT:  Yeah.
 6              THE COURT:  Okay.
 7              THE DEFENDANT:  You know, I got to argue.  It's a
 8   headache.
 9              THE COURT:  I'm sure it is.
10              All right.  I think that covers it for today as far as
11   anything we can do.
12              Ms. Doyle, anything else from the government?
13              MS. DOYLE:  I was able to check with Ms. Ivers now and
14   she's available for the 6th.
15              THE COURT:  All right.  Very good.  Thank you for
16   doing that.
17              MS. DOYLE:  Thank you.
18              THE COURT:  All right.  Mr. Wendt, anything else?
19              MR. WENDT:  No, Your Honor.
20              THE COURT:  All right.  Thank you all very much.
21              We are in recess.
22              DEPUTY CLERK:  All rise.  This matter is adjourned.
23   This Court now stands in recess until 12:00 p.m.
24              (Whereupon, the Court adjourned at 10:19 a.m.)
25                             --oo0oo--
```

CERTIFICATE

I, Stacy M. Baldwin, Federal Official Court Reporter in and for the United States District Court of the District of Alaska, do hereby certify that the foregoing transcript is a true and accurate transcript from the digital recording in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated January 31, 2023.

/s/ Stacy M. Baldwin
STACY M. BALDWIN, RCR, RMR
FEDERAL OFFICIAL COURT REPORTER