```
1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF ALASKA
2

3   UNITED STATES OF AMERICA, )
                              )
4           Plaintiff,        )
                              )
5        vs.                  )
                              )  CASE NO. 3:19-cr-00003-RRB-MMS
6   TRISTAN GRANT,            )
                              )
7           Defendant.        )
    _____  )
8


9     TRANSCRIPT OF REMOTE PROCEEDINGS VIA TELECONFERENCE STATUS
                            CONFERENCE
10     BEFORE THE HONORABLE RALPH R. BEISTLINE, DISTRICT JUDGE
                    Thursday - November 18, 2021
11                     10:00 a.m. - 10:34 a.m.
                         Anchorage, Alaska
12

13  FOR THE GOVERNMENT:
        Office of the United States Attorney
14      BY:  JENNIFER LOWE IVERS
        BY:  KAYLA HAYES DOYLE
15      222 West 7th Avenue, RM 253, #9
        Anchorage, Alaska 99513
16      907-271-1555

17  FOR THE DEFENDANT:
        Law Offices of James Alan Wendt
18      BY:  JAMES A. WENDT
        425 G Street, Suite 610
19      Anchorage, Alaska 99501
        907-258-9100

20

21  Clerk in Attendance: Irma Hernandez

22  _____
                        STACY M. BALDWIN
23                 Realtime Certified Reporter
                 Federal Official Court Reporter
24                   222 West 7th Avenue, #4
                     Anchorage, Alaska 99513
25          Transcript Produced from the Digital Recording
```

1                    (Call to Order of the Court at 10:00 a.m.)

2              DEPUTY CLERK:  His Honor, the Court, the United States

3    District Court for the District of Alaska is now in session,

4    the Honorable Ralph R. Beistline presiding.

5              Your Honor, we're on record in Case No.

6    3:19-cr-00003-RRB-MMS, *United States of America versus Tristan*

7    *Grant*.  We have Mr. Grant on the line.  James Wendt for the

8    defendant.  Jennifer Lowe Ivers and Kayla Doyle for the

9    government.  And court staff, Irma Hernandez, deputy clerk.

10             THE COURT:  Very good.  Thank you.  Good morning.

11   This is a status hearing primarily to set a sentencing date and

12   to get matters moving.  I also have defendant's motion to allow

13   late service of draft pre-sentence report objections.

14             Mr. Wendt, did you want to begin?

15             MR. WENDT:  Thank you, Your Honor.  Yes.  I would

16   renew my request for a sentencing date in the middle of

17   January, which would be approximately two months from now to

18   allow us to prepare.  I know there was some other motions I

19   need to file, and we've got to get a sentencing memo done, and

20   I have to meet with my client one more time at least on this

21   pre-sentence report.

22             We also have a date of November 23rd for the motion to

23   restrain communications.  I filed an update on that about ten

24   days ago and Magistrate Judge Scoble has put that on for a

25   status hearing on the 23rd.  I don't know what's going to

1    happen.  We are asking for another hearing there with more

2    witnesses, which presumably would happen in December.

3         Additionally, my December is really booked up with a

4    number of things.  Sedric Williams, as I've mentioned.  I've

5    got a sentencing in Pangalenon (phonetic) on the 7th.  I have

6    jury duty myself on the 20th.  I have a trial for the 13th.  So

7    I would ask that we simply put this on for the middle of

8    January, Judge.

9         THE COURT:  Ms. Ivers.

10        MS. IVERS:  I would, Your Honor, renew our position on

11   this at this point.  We've been ready.  We are ready.  We would

12   like to get this done as soon as possible.

13        THE COURT:  Okay.  Well, I agree with Ms. Ivers.  We

14   need to get this done as soon as possible.  My notes -- I've

15   looked at this again -- trial took place seven months ago,

16   pre-sentence report was filed three months, government's

17   sentencing memorandum was filed over two months ago.  Usually

18   the defense doesn't have all these things before them -- before

19   they even file their objections or their sentencing memorandum.

20   I think the parties have had ample time to prepare for

21   sentencing and to review the relevant documents.

22        The Court notes that the defendant has already been

23   sentenced for the escape case, which all took place -- the

24   trial of which took place after this case.

25        Now the Court is beginning, again, concluding that

1  defendant is just simply attempting to manipulate the system by
2  not agreeing to anything --
3         THE DEFENDANT:  How am I manipulating the -- I'm not
4  doing none of this.  I am not doing none of this.  This is not
5  me doing it.  This is the government doing this.  I didn't put
6  no restraining order on me.
7         Listen, I can't object to no PSR, because of the
8  (indiscernible) of this temporary restraining order.  I can't
9  call my lawyer on time, which my lawyer can tell you.  I have
10  to wait to -- for days to get a phone call to even -- and he
11  can't visit me.  So how can I -- how can I communicate and
12  object to anything without seeing my lawyer?  I have a -- I
13  have a restraining order and a protective order on me.  So how
14  can I see anything to prepare for or to object to anything?
15  That's not my doing.  That's (indiscernible.)  I'm not
16  manipulating nothing.
17         THE COURT:  Well, you and I disagree about that.
18         THE DEFENDANT:  We always do.  Because this is a
19  violation of my rights.  So I (indiscernible,) but like I said,
20  I will be back.  I will be back, and I'm going to beat this.
21         THE COURT:  That's fine.  But what's happening --
22         THE DEFENDANT:  I know.  I know.
23         THE COURT:  What's happening before the magistrate
24  judge is before -- is really not of great concern for me --
25         THE DEFENDANT:  Yes, it is, because you just said I

1  needed -- the other time I went to court, you're telling us we
2  got to go in front of the magistrate judge about my discovery,
3  we already spoke about my 14th Amendment and all the other
4  stuff about me getting -- I'm allowed to get discovery and do
5  everything for my sentencing.  I can't be sentenced without --
6  just like how I went to trial without seeing anything, it's the
7  same thing.  There's *Giglio*, there's (indiscernible.)  There's
8  all kinds of stuff these people -- they didn't disclose a lot
9  of stuff.  I'm not going to sentencing like that.  No.

10        THE COURT:  Well, now those are all maybe good points
11  on appeal, but we're trying to get this -- get this thing done
12  so that you can proceed with your appeal.  But that can't --

13        THE DEFENDANT:  Yeah, but there's stuff that I could
14  put in here before appeal process, that I can bring up.  That I
15  can -- that I can challenge.  I can't challenge something that
16  I don't have and I'm not allowed to see.

17        Once again, my lawyer -- I have not seen my lawyer,
18  not one time.  He's not allowed to come down here.  And I can't
19  call him like I'm supposed to.  By being in this jail, the way
20  I'm in this jail, because of this incident report situation
21  that they put me up under, because of this restraining order
22  that is a bunch of bullshit, that they got me up under.  I did
23  not put myself up under this.  This has been since June.  This
24  is the government.

25        And they're talking about they're ready, of course

1  they're ready, because they know -- they playing the game.

2          THE COURT:  So, Mr. Grant --

3          THE DEFENDANT:  I just went through another -- I just

4  now seen my other -- my other -- I done see my -- all the

5  paperwork last week.  I ain't even -- I'm not getting nothing

6  that I'm supposed to get.  I'm not seeing or doing nothing that

7  I'm supposed -- and you say that I'm manipulating.  No.  You

8  all are manipulating the system and trying to railroad me.

9  There's a big difference.

10          THE COURT:  Yeah.  And what I believe is that no

11  matter what date we set, you're going to want to continue when

12  it gets to that date.

13          THE DEFENDANT:  No.  I'm asking for to give me what I

14  need and I don't need -- and I won't need no continuances after

15  that.  I've been asking -- you haven't -- I've been asking for

16  stuff for months and I still haven't got nothing.  So all I'm

17  asking is give me what I need so I can go to my sentencing

18  (indiscernible.)

19          THE COURT:  Mr. Wendt, could you respond to that?

20          MR. WENDT:  I think I can, Judge.  Mr. Grant made a

21  reference to just getting some documents I think last week,

22  that is actually true.  Mr. Grant did receive the draft

23  pre-sentence report immediately.  It went out in the mail, if

24  not the day I got it, the day after I got it.

25          Nonetheless he did not get the finally pre-sentence

report, which really doesn't change anything.  But it does have
a recommendation --

            THE DEFENDANT:  It does.  It has a lot of stuff in
there that is not in the draft pre-sentence report that they
switched over and put in there.  Just like how they're -- just
like when I just went to my sentence yesterday for the escape
and they got a lot of stuff in there that I don't know
nothing -- that I didn't know nothing about, and a lot of this
stuff that I'm asking for is dealing with all of that.  So it's
a bunch of bullshit.

            THE COURT:  Mr. Wendt has the floor.

            MR. WENDT:  But he is correct, and that's my fault.  I
will take responsibility.

            THE DEFENDANT:  It ain't your fault.  It's the
government's fault too.

            THE COURT:  I don't care whose fault it is.  Usually
there's not much difference between the initial and the final.
I didn't see the initial.  I have the final.  So why don't you
get that to your client?

            MR. WENDT:  Well, he does have it now.

            THE DEFENDANT:  (Indiscernible.)

            THE COURT:  He has it now.

            THE DEFENDANT:  Yeah.  I haven't spoke to him since
last week.  It's not his fault.  It's because of this --
because of this restraining order that they put on me at the

jail.  I've been in the hole since June and in order for me to
use the phone to call my attorney, I have to wait until
everybody else go to court or all this other stuff for them to
bring me down here, which is hindering me -- hindering my
situation.  He can't come see me so I can't -- I can't speak to
him -- I got -- when I ask to speak to him, I got to wait.  And
then if I don't get it done then I got to wait the next day.

It's been four days I've been asking to speak to him.
And now I just now getting the chance to speak to him.  That's
not his fault.  That's the government's fault for this bullshit
ass restraining order.

THE COURT:  Okay.  So, Mr. Wendt, I'm trying to -- I'm
trying to hear from you.  What is your -- how can we resolve
this problem ASAP?

MR. WENDT:  Okay.  If Mr. Grant could wait until I'm
done, I'm sure the Court will listen to what he has to say, but
if I could just finish up, Judge.

THE COURT:  You have the floor.

MR. WENDT:  Okay.  Regardless, it was certainly in
part my fault that he didn't get the actual final pre-sentence
report.

THE COURT:  I want to get the solution now.  He has it
now.  Let's get moving.

MR. WENDT:  I think the solution is to put this off
until January.  It's only two months out.  We'll be able to

1    finish this thing up with the pre-sentence report.  Mr. Grant

2    does want some motions filed.  It is absolutely true that

3    Mr. Grant has been focused on this restraining order that was

4    filed in -- I'd have to go back and look -- I think it was last

5    June.

6                THE DEFENDANT:  June.

7                MR. WENDT:  Yeah.  And he's been extremely focused in

8    that.  And whenever we speak, we spend a lot of time talking on

9    the restraining order, and it's still going on.  But hopefully

10   we're going to have that status hearing on the 3rd and that

11   will be settled in some fashion.  And then, quite frankly, I've

12   got a lot to do in December.  I've got jury duty the week of

13   the 20th before Christmas.

14               THE COURT:  Is that state jury duty or federal?

15               MR. WENDT:  That's state jury duty.

16               THE COURT:  Maybe we could do a letter for you.

17               MR. WENDT:  Okay.  All right.  Actually, I could have

18   gotten out of it, but it's too late now, I guess.

19               THE COURT:  It's never too late.

20               MR. WENDT:  But, yeah.  I have a trial set for the

21   13th, but I don't think it's going to go.

22               THE COURT:  You're not answering my question.

23               MR. WENDT:  Okay.  The question, quite frankly,

24   Judge --

25               THE COURT:  Let me restate the question.

1           MR. WENDT:  Yes.

2           THE COURT:  You keep saying the solution is doing

3    something in January.  I keep saying, that's not a solution.

4    That just kicks the can down the road.  I want to know what we

5    can do now, this week, to satisfy your concerns.  What can we

6    do to get you with your client?  Let's not talk about some

7    endless solution.  Let's get you -- last time we tried to get

8    you together with your client, he escaped, so we can't do that.

9    So what do we do now?  What can we do to accommodate you to

10   help you get in the same room with your client or do whatever

11   you need to do to talk about the pre-sentence report?

12          The other matter is between you and Judge Scoble.

13   It's not even -- I don't think it's even mentioned in the

14   pre-sentence report that I have.  But it's an issue that's

15   important to the government and it's an issue that's important

16   to your client.

17          And also, you know, we talk about justice delayed is

18   justice denied.  We're delaying things here, not necessarily

19   for the defendant, but the victims have a right to finality as

20   well.  That's another thing -- reason, I have to keep this

21   thing moving.  And putting it off another two months and then

22   another two months forever is not the solution and it doesn't

23   do justice to the victims.

24          So with that in mind, what can we do to get this

25   moving from your perspective, Mr. Wendt?

1          MR. WENDT:  The jail has been very agreeable to

2     allowing me to have telephonic meetings with my client.  I can

3     set them up and we've done that on a number of occasions.  I

4     can send an email to the jail and say I would -- as long as I

5     do it at least within 24 hours prior to the request, I need to

6     have a meeting with Tristan Grant for 30 minutes or for an hour

7     or whatever, set something up for me.  And they've been very

8     good about doing that.  So I don't want to mislead the Court

9     that I haven't been able to do that, but we have done that.  So

10    I can do that.  And I will do that to finish up this -- I just

11    have a few questions for my client on the pre-sentence report

12    about issues that are a bit outstanding.

13          And today is the 18th, I could set up a meeting --

14    well, I could set up a meeting for the 22nd, next Monday.

15          THE COURT:  Do it.

16          MR. WENDT:  And have a meeting then, go over this

17    thing.  I believe I said I'd like to get the objections in by

18    the 23rd.  So if I meet with him on the 22nd, I can get those

19    objections in to the pre-sentence report writer on the 23rd.

20    Presumably I'm -- there are a couple changes that he needs to

21    make to the reports, some factual changes.  That are, you know,

22    not argue -- nothing to argue about.  They're just simply

23    incorrect.  And then there are also objections that I doubt he

24    would make, but he could append them to the report simply very

25    quickly, I would think.  Do a supplemental report with the few

1  factual changes and then the other objections appended to the

2  report.

3          And I would imagine if I get that in on the 23rd, I

4  can't speak for the pre-sentence report writer, but it could

5  probably be done fairly quickly.  I know we have Thanksgiving

6  coming up, but perhaps, you know, by early December a final

7  pre-sentence report could be in.  So I would suggest we do

8  that.  And then talk about a sentencing hearing.  Maybe we

9  could put this on for a status hearing maybe December 3rd,

10  would that be --

11          THE COURT:  Now let me tell you what I'm thinking and

12  then you can respond to that.

13          MR. WENDT:  Okay.

14          THE COURT:  I've looked again at your motion to allow

15  late service.  I'm obviously going to grant that in part.  I

16  was going to give you even more time than you just requested.

17  I was going to give you until December 1st to file your

18  objections.  That gives you time to meet with your client, once

19  and maybe even twice, telephonically at the jail.  So if you

20  file your objections by December 1st, and today is the 18th,

21  that gives you quite a while to get that taken care of.

22          MR. WENDT:  It does.  Thank you, Judge.

23          THE COURT:  If you take a week after that, you can

24  file your pre-sentence report by December 8th.  And then we can

25  do the sentencing December 15th or sometime in that timeframe.

1　That's just the suggestions I had.  Remembering I have to do

2　justice to your client and to you, make sure that everyone has

3　an option.  I recognize the difficulties caused by the

4　pandemic.  I recognize the difficulties because of his

5　situation while in custody.  But I also recognize an obligation

6　I have to the interest of justice to keep matters moving and to

7　do justice to the victims, as well as to the defendant.

8　　　　So those are the dates that I was thinking that would

9　get this done before the end of the year, but give you the

10　additional time that I think you would need.

11　　　　Now your turn to respond.

12　　　　MR. WENDT:  Well, Judge, yeah.  As I said, I've spent

13　a lot of time with my client on this restraining order --

14　　　　THE COURT:  And we appreciate that.

15　　　　MR. WENDT:  And he's been concentrating on that.  And

16　I've also, you know, I've got to get these phone calls to him.

17　I've got to open up the -- the magistrate judge, Judge Scoble,

18　has indicated his willingness to review the protective order on

19　discovery.  And I think -- and the government has indicated, I

20　know they are on the phone now, that they would perhaps not

21　oppose certain elements that had been subject to a protective

22　order.  So it would be nice if I could get that discovery to

23　him.  I will file that motion and serve it on the government.

24　I could do that by tomorrow and perhaps --

25　　　　THE COURT:  You're talking about the motion before

1  Judge Scoble, not before me, right?

2          MR. WENDT:  That's correct.  It would be before Judge

3  Scoble.  And I think -- my client really -- one of the issues,

4  Judge, is my client has not been able to listen to the phone

5  calls.  We have many, many phone calls.  And they're phone

6  calls that he made.  But yet, they're subject to the protective

7  order, and even Judge Scoble has stated in court that he really

8  doesn't see a big problem with my client listening to phone

9  calls that he's already made.

10          THE COURT:  Okay.  Well, maybe we can solve that

11  problem.  But, again, I don't know how that directly relates to

12  the sentencing.

13          THE DEFENDANT:  Well, can I --

14          THE COURT:  I don't want to hear from you, sir.  I

15  want to hear from your attorney.  Go ahead, Mr. Wendt.

16          MR. WENDT:  Well, my client -- my client has the

17  position that, you know, these phone calls have been used

18  against him.  And that there are certain -- there are -- there

19  are hundreds of phone calls, Judge.  And there are phone calls

20  which would negate some of the phone calls that were presented

21  at trial and perhaps lessen the severity of my client's

22  behavior.

23          And that would be helpful --

24          THE DEFENDANT:  It's not just phone calls.  There is

25  other evidence that I have not got because of this protective

1    order.  And I haven't seen my discovery.  (Indiscernible) I

2    don't know how many times I got to say it.

3            THE COURT:  And how many times do we have to say,

4    you've been listening here.  Your attorney is going to meet

5    with you Monday --

6            THE DEFENDANT:  I understand, but we in court right

7    now and I'm going to get it on the record, I'm going to keep on

8    every time.  I haven't -- I got a protective order and I

9    haven't seen my discovery.  And now y'all want me to go through

10   sentencing without seeing my discovery to bring up material

11   that is guilt or punishment for my sentencing, just like for my

12   trial.

13           I'm not -- I can't do it like that.  I need to see --

14   I need to see my stuff.  I need to get my -- what's suppose --

15   my due process, I'm supposed to get what supposed to come to

16   me.

17           THE COURT:  You have made --

18           THE DEFENDANT:  (Indiscernible) railroad.

19           THE COURT:  I want to hear from your attorney.

20   Mr. Wendt, keep going.

21           MR. WENDT:  Okay.  Well, Judge, I'm just about done.

22   But, yes, it would be helpful if he could get these phone calls

23   and listen to them.  As I think I mentioned in my filing to the

24   Court, I've got to go back and listen to these interviews that

25   were in the final pre-sentence report.  Even though I listened

1  to these things, it was months ago.  And my client is convinced

2  that these interviews have been misstated.  So I've got to go

3  back and listen to all these interviews, even though I've done

4  it already.  I've got to go back and listen to all of them and

5  compare them to the notes that I've already taken from my

6  client about what he feels is wrong with them.  So that's all

7  going to take time, Judge.

8          THE COURT:  Okay.

9          MR. WENDT:  I can meet this deadline as far as filing

10  objections by the 1st, because I will listen to these

11  interviews over the weekend.

12          THE COURT:  How soon thereafter before you get the

13  pre-sentence -- your pre-sentence memo?  I said before, I meant

14  memo -- for your sentencing memo?

15          MR. WENDT:  I think that you could put it down for the

16  8th.  I think I could actually meet that, Your Honor.

17          THE COURT:  Okay.  Then what's wrong with doing

18  sentencing the 15th then?

19          MR. WENDT:  Well, my client would like to have the

20  opportunity to review all these things on his own and then meet

21  with me after he gets a chance to review them.

22          THE COURT:  Well, I presume that that process is going

23  to start, if it hasn't started already, is going to go -- we

24  don't have to wait until December to do that.  We can do that

25  starting tomorrow or Monday.  We need to keep pressing this

forward so he's had every opportunity that we can legally provide him to review this.

Anyhow, like I said before, I don't think we're going to ever make him happy. We'll keep trying.

THE DEFENDANT: Judge, the only thing to make me happy, all I'm asking is give me what I'm legally allowed to have, which is my discovery. So I can show and prove that the bullshit you all did at trial is not -- I don't supposed to be here. That's all I'm asking. (Indiscernible) and then whatever happens, I know whatever you're going to do at sentencing, you're going to do. And then I can just say, well, I got it on the record. And then after that, I can appeal it. That's all I'm asking. Give me my stuff.

THE COURT: Okay. Ms. Ivers, what's your response?

THE DEFENDANT: (Indiscernible.) She's --

THE COURT: Ms. Ivers, you've heard everything for the last 20 minutes, what do you think? Any changes from you?

Are you withholding anything from the defendant?

THE DEFENDANT: Hell, yeah.

THE COURT: I'm not asking you.

THE DEFENDANT: I'm going to show you though, Judge. I'm going to prove it to you and then I'm going to need an apology.

THE COURT: Okay. We'll see.

Ms. Ivers.

1          MS. IVERS:  I had a discussion with Mr. Wendt a few
2     weeks ago about these jail calls.
3          THE DEFENDANT:  It's not just the jail calls.
4          THE COURT:  Okay.  Go ahead.
5          MS. IVERS:  To discuss whether they're covered by
6     protective order.  The trick is there's so many, we don't
7     actually know, you know, I don't think anyone actually
8     (indiscernible.)
9          THE DEFENDANT:  (Indiscernible.)
10          MS. IVERS:  So, you know, we can have -- I'm happy to
11     have another discussion about whether we think those are
12     covered by the protective order.  I had thought there was going
13     to be a motion filed at some point a few weeks ago.
14          But, no, we are not withholding discovery from the
15     defendant.  He has had access to -- I mean -- and there are
16     procedures for defendants who are in custody and have protected
17     discovery to allow them to review that.  As Your Honor knows,
18     we have made every effort to allow the defendant to review the
19     discovery.
20          THE DEFENDANT:  No, you haven't.
21          MS. IVERS:  The last time we made such an effort, he
22     escaped -- (indiscernible.)
23          THE DEFENDANT:  Yeah.  That's one time.
24          MS. IVERS:  -- (indiscernible) 36 months.
25          THE DEFENDANT:  What about after that?  What about

1  after that?  Exactly.

2          THE COURT:  I'm trying to listen to you, Ms. Ivers.

3          MS. IVERS:  There's no -- there's been no discovery

4  violation here, Judge.  And I am available --

5          THE DEFENDANT:  It would be a motion.

6          MS. IVERS:  -- for sentencing.

7          THE COURT:  Well, here's my situation.  I want to do

8  it one time.  Everything here is recorded.  We want to make

9  sure he gets all his rights (indiscernible.)  I'm concerned

10 that this will never end if we wait until he's ready for

11 sentencing.  So I got to keep it moving for the defendant as

12 much -- as much rights as we can reasonably apply, recognizing

13 that finality is an important part of this as well and that

14 what happens between -- with regards to this protective order,

15 that will go with him into the future.  It's not going to -- I

16 don't think it's going to impact our sentencing process.

17         So I've given some proposed dates.  Are they

18 unreasonable, Mr. Wendt?

19         THE DEFENDANT:  Yeah.

20         MR. WENDT:  Well, Judge --

21         THE COURT:  What if I do this, what if I give you

22 another week or two for the sentencing?  I said the 8th -- no,

23 what did I say, the 15th?

24         MR. WENDT:  Yeah, you said the 15th, Judge.

25         THE COURT:  And you're worried about jury duty that

week.

MR. WENDT:  Well, no.  It's state jury duty.  I'm sure you could get -- well, I do have jury duty starting 20th of December, but...

THE COURT:  Well, it will be all done.  That's the beauty, this will be done by then and you can go with a clear conscience and satisfy your jury duty.  Otherwise we enter into the Christmas season and the potential for further delays.

So it seems to me December 15th at like 1:15 in the afternoon is a reasonable time to shoot for.  I'm expecting that you'll do everything -- and by the way, I appreciate what you've done so far.  I'm not critical in that regard, but we've got to keep this moving.  Like I said, trial was seven months ago and you know the pre-sentence report was roughly three months.  So everybody knows what the probation officer thinks and the government sentencing --

THE DEFENDANT:  Can I say something, Judge?

THE COURT:  And (indiscernible) the government position is as well.  So yes, Mr. Grant.

THE DEFENDANT:  This is the last -- this is the only thing that I'm asking.

THE COURT:  Go for it.

THE DEFENDANT:  I'm asking you this.  If -- if I -- because it need to make sense to me.  If I have a protective order, right, on my -- on my -- on my discovery, and I haven't

1   went over discovery -- I'm only allowed to look at discovery if
2   my attorney or an investigator bring it to me to see, right,
3   and I only seen my attorney twice; once at the jail an hour
4   before trial and when I so-called escaped or whatever.  You see
5   what I'm saying.  So how, in this 35 pieces of discovery that I
6   ain't seen interviews and all this other stuff, so how if I
7   still haven't seen it before trial and now, how is that proper?
8   How is that right?
9           And then I'm looking at the PSR and I'm seeing all
10  these -- these interviews and statements from other people that
11  I didn't even know nothing about.  And even in the PSR there's
12  a statement that one of the victims made that if I would have
13  known that, I could have used that at trial to impeach and so
14  forth and so forth.  You're still sitting here right now to
15  this day saying that everything is properly done for me, and
16  it's me that's doing it.  I'm just asking how would a
17  protective order -- and still the protective order is on me and
18  I still haven't been able to see my attorney, still to this
19  day, or see any of the discovery -- that this all is done
20  right?
21          THE COURT:  My understanding is that the magistrate
22  judge, Judge Scoble, is looking at the matter and has a hearing
23  set.  Your attorney's talking --
24          THE DEFENDANT:  No.  He has a hearing set -- he has a
25  hearing set for a hearing.  He ain't look at no protective

order.  I think my attorney just said he ain't even put in the

order yet.  I don't know.  I haven't talked to my attorney.

Mr. Wendt, did you put in a motion yet?

MR. WENDT:  No.  But as I said to the Court, I will

get it out before the end of the day tomorrow.

THE COURT:  Okay.  And this has nothing to do with --

you want to relax the protective order to allow documents to be

provided to your client.  These primarily I think I understand

are phone calls that he's a party to.  The parties can talk

about.  We need --

THE DEFENDANT:  (Indiscernible.)  Your Honor, it's

phone calls of other things.  But it's for me to -- I'm the

one -- I'm just -- like I said, I've been asking for this for

months so I can -- so I can get prepared to go to sentence.

But you're rushing me doing that like it's my fault.  And I'm

asking for those materials so I can be prepared.  But then

you -- in order for me to get the materials, I got to go

through the materials.  It's a lot of material.  I got to go

through the material and then make my objections, then I will

be prepared.

You're trying to say I'm going to be -- it's going to

be impossible for them to do all that in this amount of time.

And just like -- and I'm sure, like I told -- like I told you

at the last court date, asking the same thing, and you the one

that said, you told my attorney, yo, to put in the motion.  The

1  motion still hasn't been done, right, so what do you think I've

2  been going through for the last couple of months?  I'm asking

3  for the same shit over and over and over, and it hasn't been

4  done.  And then you saying, it's me.  It's me who's doing it.

5          So this is what I'm going to do, since everybody want

6  to play games.  I'm going to fire my attorney and I'm going to

7  represent myself, and you got to give me all my shit.

8          THE COURT:  All right.  Mr. Wendt, final word from

9  you.

10         MR. WENDT:  Final word, Judge.

11         THE DEFENDANT:  I know how to play too.

12         MR. WENDT:  I would urge my client to hold off on

13  firing me.

14         THE DEFENDANT:  No.  I'm going to -- he keeps saying

15  I'm manipulating the system, I'm going to manipulate the system

16  then.  I know how to manipulate the system if I want to.

17         THE COURT:  That's obvious.  So --

18         THE DEFENDANT:  Yeah, I know, I know.  I

19  (indiscernible) you want some bullshit too.  You're going to

20  railroad me.

21         THE COURT:  Mr. Wendt, your turn.

22         THE DEFENDANT:  (Indiscernible.)

23         MR. WENDT:  I'll talk to my client (indiscernible.)

24         THE DEFENDANT:  You got me fucked up, man.

25         THE COURT:  Okay.  Mr. Wendt.

```
 1        MR. WENDT:  I'll set up a meeting with my client on
 2   Monday, discuss this with him, I'll get that motion filed and
 3   get that to him.  And maybe I can submit to the Court a status
 4   report of my own and serve it on the other side and let the
 5   Court know what our position is next week.
 6        THE COURT:  Okay.  But for now, I don't want to end
 7   this hearing without having something done.  We decided that
 8   objections to the pre-sentence report are going to be filed on
 9   or before December 1st, 2022.  That's giving you more time than
10   you even requested.
11        MR. WENDT:  Correct.
12        THE COURT:  That your pre-sentence memorandum will be
13   filed on or about December 8th, 2022, and I've tentatively set
14   sentencing for December 15th, 2022, at 1:15 in the afternoon.
15        Now, I'm a little flexible on that if you can show
16   good cause.
17        MR. WENDT:  Okay.
18        THE COURT:  But I'm not flexible if it's just
19   continuing to complain and go in circles.  Because like I said
20   before, one of the obligations I have is finality.  We have to
21   bring this to an end.  And I've looked at the pre-sentence
22   report, I've seen what the proposed offense level is, I've seen
23   what the proposed criminal history is.  It's a fairly thorough
24   document.
25        Sounds like the next thing we need to do is do
```

1   sentencing and then I'll allow this matter to proceed to the
2   next phase.
3           So, Ms. Ivers, you've been patient.  Anything else you
4   want to add in closing?
5           MS. IVERS:  Your Honor, I am concerned with the
6   defendant's request to fire his attorney and represent himself.
7   I don't think we can just kind of move on and ignore that.
8           DEPUTY CLERK:  Your Honor, I did show that the
9   defendant disconnected.
10          Mr. Grant, are you still there?
11          THE COURT:  Did he hang up?
12          DEPUTY CLERK:  Yes, Your Honor.  It looks like my
13  phone line just dropped from the jail.
14          THE COURT:  So he may have just hung up, which there's
15  nothing really more that we need to do now.  I set the dates
16  there.  If there's going to be any motions, any requests,
17  Mr. Wendt, you need to take that matter up with your client.
18          MR. WENDT:  I will do it, Judge.
19          MS. IVERS:  And Judge --
20          THE COURT:  Yes.
21          MS. IVERS:  Sorry, go ahead.
22          THE COURT:  Go ahead.  I was going to -- including the
23  request for withdrawal of counsel.  That was just mentioned.
24  It wasn't made.  It's just he's thinking of going to do it,
25  but, you know.

```
 1            MS. IVERS:  Yeah.  I just don't want to -- I don't
 2    want to get into a situation where we have a *Faretta* issue.
 3    And so, I hope we can, yeah, make sure that that gets addressed
 4    (indiscernible) by the Court.
 5            THE COURT:  Well, I don't know.  I don't have a motion
 6    before me.  I don't have any issue before me.  Mr. Wendt's
 7    going to meet with him on Monday.  I expect any of those kind
 8    of issues would be raised at that time and the Court would be
 9    advised.
10            MS. IVERS:  Okay.
11            THE COURT:  But it's not -- he can't just say, I'm
12    going to fire my attorney.  He has to bring that matter to the
13    Court and the Court has to make a final determination on that
14    issue.
15            MS. IVERS:  Yeah.
16            THE COURT:  Clear, Mr. Wendt?
17            MR. WENDT:  It is clear, Judge.
18            THE COURT:  Okay.  At least we made a little bit of
19    progress towards moving this thing towards a resolution.  We
20    will see where it ends up.
21            So with regard to the motion that Mr. Wendt filed to
22    allow late service, that's granted.  That is granted.  And I
23    set a new trial date.  So I guess we say it's granted in part
24    and denied in part.
25            Thank you all very much.  Have a good day and we'll
```

1    talk to you later.

2              MR. WENDT:  Thank you, Judge.

3              MS. IVERS:  Thank you, Your Honor.

4              DEPUTY CLERK:  This matter is adjourned.  This Court

5    now stands adjourned subject to call.

6              (Whereupon, the Court adjourned at 10:34 a.m.)

7                            --oo0oo--

8                            CERTIFICATE

9        I, Stacy M. Baldwin, Federal Official Court Reporter in and
     for the United States District Court of the District of Alaska,
10   do hereby certify that the foregoing transcript is a true and
     accurate transcript from the digital recording in the
11   above-entitled matter and that the transcript page format is in
     conformance with the regulations of the Judicial Conference of
12   the United States.

13       Dated February 2, 2023.

14

15                                 /s/ Stacy M. Baldwin
                                   STACY M. BALDWIN, RCR, RMR
16                                 FEDERAL OFFICIAL COURT REPORTER

17

18

19

20

21

22

23

24

25